LOGAN v. FIDELITY AND CASUALTY COMPANY, *Appellant.*

Division One, November 15, 1898.*

1. **Life Insurance:** ACCIDENT POLICY: SUICIDE. Suicide is no defense to a suit founded on the policy of an accident insurance company, unless the insured contemplated suicide at the time of making application for the policy.

2. ———: ———: ———: STATUTES. Section 5855, Revised Statutes 1889, declaring that suicide shall be no defense to a suit on a policy providing for the payment of so much money in case of death, etc., applies to policies issued by accident insurance companies as fully as to those issued by any other kind of life insurance companies.

*NOTE.—Decided July 6, 1898; motion for rehearing filed; motion overruled November 15, 1898.

3. ———: ———: ———: ———: STATUTORY CONSTRUCTION. And this is the meaning of that statute, although the statute from the time of its enactment up to the Revision of 1889 was found in the chapter entitled "Life Insurance," and although the State may afterwards have required that the different classes of business done by a company (whether life insurance purely, or accident insurance), be made separate departments of its business, and although in addition to its contract to pay so much money in case of death the company may also contract to pay a weekly indemnity in case of disability by accident. None of these facts except an accident insurance company from the operation of the statute concerning death by suicide.

4. ———: DIFFERENT KINDS OF POLICIES. The calling of a contract of insurance an accident, tontine, ordinary life, or bond-investment policy, does not make it any the less a policy of life insurance, nor remove the policy from the operation of the statute.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Warner, Dean, Gibson & McLeod* for appellant.

(1) The suicide clause has no application to accident insurance. By its terms it applies only to life policies. Accident insurance has always been defined by the legislature to be "insurance other than life." Acts 1869, sec. 1, p. 45; 1 Wag. Stat. 1870, sec. 1, p. 759; R. S. 1879, sec. 5987; R. S. 1889, sec. 5873. (2) When accident insurance was defined not to be life insurance, provision was made on the same day for the creation of life insurance companies. Acts 1869, p. 25; 1 Wag. Stat., sec. 1, p. 738; R. S. 1879, sec. 5938. (3) When the law was enacted for the creation of assessment companies the legislature distinguished between the two kinds of insurance. R. S. 1889, sec. 5860. (4) Accident insurance companies could not engage in life insurance. Acts 1869, sec. 1, p. 45; R. S.

1879, sec. 5987; Wag. Stat., sec. 1, p. 759. (5) When the suicide clause was placed in article 2 of the chapter relating exclusively to life insurance, life companies could not engage in the accident insurance business. R. S. 1879, secs. 5938, 5982. (6) In 1889 for the first time the insurance companies organized to insure the lives of persons and issue annuities and endowments based upon human life, were permitted to engage also in the accident insurance business, but this only as "a separate department." This was allowed in order to place insurance companies organized under the laws of Missouri on an equality with eastern life insurance companies. This law was passed ten years after the suicide clause was enacted. R. S. 1889, sec. 5811. (7) Throughout article 2, Revised Statutes 1889, the words "life insurance" and "life policies" are used strictly with reference to life insurance, and do not include accident insurance. See sections 5840, 5841, 5848, 5856, 5857, 5858, 5859, etc. Accident insurance is not life insurance. The one insures against death from any cause; the other only insures against personal injuries and death from accidental, external and violent means. The one insures against an event that is certain to arise; the other is merely against a contingency which may never arise. This court has defined what accident insurance means, and it is in strict harmony with the legislative definition. *Lovelace v. Traveler's Protective Ass'n*, 126 Mo. 105.

*Fyke, Yates & Fyke* and *Reed & Reed* for respondent.

(1) Section 5855 of the Revised Statutes of 1889 prohibits the setting up of suicide as a defense in this State in all suits on contracts of insurance in which the insurer agrees to pay a certain sum of money con-

Logan v. Fidelity and Casualty Co.

tingent upon the death of the insured within the duration of the contract, unless it shall be shown to the satisfaction of the court or jury trying the case that the insured contemplated suicide at the time he made his application for the policy. R. S. 1889, sec. 5855; *Indemnity Co. v. Berry*, 50 Fed. Rep. 511; *National Union v. Marlowe*, 74 Fed. Rep. 775; *Hanford v. Massachusetts Benefit Ass'n*, 122 Mo. 50; *Haynie v. Indemnity Co.*, 139 Mo. 416; *Sparks v. Indemnity Co.*, 61 Mo. App. 109. (2) Such a contract is a policy of insurance upon life within the meaning of the statute and all the authorities. 13 Am. and Eng. Ency. of Law, 629; Justice CLIFFORD in *Phoenix Life Ins. Co. v. Bailey*, 13 Wall. 616; Alexander on Life Ins., p. 1; *Briggs v. McCullough*, 35 Cal. 442. (3) The suicide statute is most peculiarly applicable to accident policies which insure life against death from accident, because suicide is usually an accident. *Ins. Co. v. Graves*, 6 Bush. 278. Being *prima facie* an insane act, suicide has in a large majority of the cases been determined to be an accident. *Ins. Co. v. Akens*, 150 U. S. 468; *Ins. Co. v. Terry*, 82 U. S. 580; *Bigelow v. Life Ins. Co.*, 93 U. S. 284; *Ins. Co. v. Rodel*, 95 U. S. 232; *Ins. Co. v. Broughton*, 109 U. S. 121; *Ins. Co. v. Lathrop*, 111 U. S. 612; *Ins. Co. v. Crandall*, 120 U. S. 527; *Breasted v. Trust Co.*, 4 Hill, 73; *Eastabrook v. Ins. Co.*, 54 Me. 224; *Blackstone v. Ins. Co.*, 74 Mich. 592; *Hutchcraft v. Ins. Co.*, 87 Ky. 304; *Ins. Co. v. Leubrie*, 71 Fed. 844.

ROBINSON, J.—This is an appeal from a judgment in favor of a beneficiary in a policy issued by the defendant insurance company, containing among others the following provisions:

"If death shall result within ninety days, from such injuries independently of all other causes, the

company will pay the principal sum of this policy to Mrs. Mary A. Logan, his mother, if surviving, or in the event of her prior death, to the legal representatives of the assured, (a) or if the loss by actual separation, at or above the wrist or ankle, of both hands, or both feet, or of one hand and one foot, or the irrecoverable loss of the sight of both eyes, shall so result within ninety days, the company will pay the assured the principal sum before named; which payment shall terminate the policy; (b) or if the loss by actual separation, at or above the wrist or ankle of one hand, or of one foot, shall so result within ninety days, the company will pay the assured one half the principal sum before named, which payment shall terminate the policy.

"Or if such injuries, independently of all other causes, shall immediately, continuously and wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation, the company will pay the assured, the weekly indemnity before specified during the continuance of such disability, and for a period not exceeding fifty-two consecutive weeks. If the assured is injured fatally, or otherwise, in any occupation or exposure classed by this company as more hazardous than that before stated, the company's liability shall be for such principal sum or weekly indemnity, as the premium paid by him will purchase at the rate fixed for such increased hazard. In case of injuries fatal or otherwise wantonly inflicted upon himself by the assured; or inflicted upon himself, or received by him while insane, the measure of this company's liability shall be a sum equal to the premium paid, the same being agreed upon as in full liquidation of all claims under this policy."

The petition in the case set out that on the eighteenth day of December, 1893, the assured, William E. Logan,

received through external, violent and accidental means, bodily injuries, which were the direct and immediate cause of and which independent of all other causes resulted in the immediate death of said William E. Logan, and that said injuries consisted of a gun or pistol shot wound in and upon the head of him the said Logan.

Defendant set up in its answer that the assured died by reason of a pistol shot wound intentionally and wantonly inflicted upon himself and by his own hand, and that the death of said assured was caused while either sane or insane, in either of which events defendant was not liable except for the amount of the premiums paid. Defendant further pleaded the stipulations and covenants contained in the policy that in the event of fatal injuries to said assured resulting from injuries wantonly inflicted upon himself, or inflicted upon himself while insane, the defendant's liability under its policy should be a sum equal to the premiums paid, said sum being agreed upon in said policy as in full liquidation of all claims thereunder, which sum with interest amounting to $20, defendant in its answer tendered to plaintiff together with all costs to date of tender, and avers its willingness to pay said sum into court with costs for plaintiff. Plaintiff then filed her reply denying each and every allegation of defendant's answer.

During the progress of the introduction of defendant's testimony in the court below, the trial was abruptly terminated by this announcement on part of the counsel for defendant: "We want this case to go up on the question as to whether or not the suicide statute makes suicide a defense in a case of this kind, and applies to a policy such as this, and if so, then the jury should be instructed to find for plaintiff, and there may not be any question upon that point, and for the purpose and in order to have the matter clear, we with-

draw all objections to proof of death, and admit, for the purpose of this trial that the proofs of death were furnished and that notice of death was furnished. It is a question we are all interested in, and it is a question that ought to be decided both for the company and for the assured." To which announcement the trial court then replied: "Your position is that if section 5855 of the statute applies to this kind of a policy, then under the testimony in this case the plaintiff is entitled to recover, otherwise not." To which Mr. Warner of counsel for defendant responded, "That is it precisely. That narrows it down so that the case will be stripped of all technicalities as to evidence." Accepting the issue of law tendered by the defendant's counsel, the court instructed the jury to return a verdict for the plaintiff for the full amount of the policy with interest. From the judgment rendered upon the verdict returned in obedience to the court's instruction, after the usual motions and preliminaries, defendant has prosecuted its appeal to this court, presenting and discussing here but the one question: Is suicide in this State a valid defense to an action upon a policy of insurance issued by an accident insurance company, containing provisions such as the one in controversy, where it is not shown that the insured contemplated suicide at the time he made his application for the policy (and it being admitted that the assured afterwards came to his death from external, violent and accidental means)?

Section 5855, Revised Statutes 1889, reads as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application

for the policy, and any stipulation in the policy to the contrary shall be void.''

Appellant's contention is that when section 5855 was enacted, it related to life insurance in its usual and ordinary significance and referred to those life policies issued by life insurance companies furnishing indemnity to the insured from death from any and every cause, and not otherwise, and in aid of its contention has given in its brief filed herein, a detailed history of the legislation of this State bearing upon the subject of life and accident insurance, and argues that as the legislature has made a class distinction between life and accident insurance, and the policies relating to such insurance under separate articles appropriately entitled ''Life Insurance'' and ''Insurance Other Than Life'' up to 1889, when the legislature authorized life insurance companies thereafter to be organized in this State, to engage not only in life insurance, but also in accident insurance, and that as each department was provided for by provisions and requirements peculiar to itself as a separate and distinct corporate creation and business venture, and that as section 5855 first appeared in the statute under chapter 119, article 2, Revised Statutes 1879, entitled ''Life Insurance,'' that the provision of that section related only to policies issued by life insurance companies, as were treated of, provided for, and designated in said article.

From our consideration of section 5855, the history of the legislation, in this state, on life and accident insurance, or life and accident insurance companies, furnishes no particular assistance in the matter of interpreting its meaning. Certain it must be, that if the provisions of section 5855, as contended for by appellant, expressly and exclusively applied to policies of insurance on life issued by life insurance companies as such, by name, prior to 1889, there is nothing to be

found in the act of 1889 widening the range of policies issued by accident companies, to cause those issued since that time to be influenced by its provisions. If prior to 1889 it was an availing defense against a policy of insurance issued on the life of the assured by an accident insurance company, that the insured had died from suicide, nothing can be found in the Act of 1889 to make the provision of section 5855, now, apply to a policy issued by an accident insurance company. Nor does the fact, that section 5855 now finds itself carried forward into, and as one of, the provisions of the statute under the head of *"Life and Accident Insurance"* make the section apply to a policy to which it would not have applied when found as one of the provisions under article 2 of the statute, entitled *"Life Insurance."* It is the language of the section, and not its arrangement in the statute under one title or another, that must first be looked to to determine its meaning.

The error into which respondent has fallen is in assuming that section 5855 was intended to affect a particular line, class or department of insurance, as the same has been classified for legislation. The real object of the section, as the clear terms of its language express, is to affect *all policies of insurance on life* from whatever class, department or line of insurance the policy may be issued or by whatever name or designation the company may be known. It is policies of a given kind, and not companies of a class, that are to be affected by the provisions of section 5855. The section was enacted clearly to protect all policy holders *of insurance on life* against the defense that the insured committed suicide, all provisions in the policies to the contrary notwithstanding, unless as provided in the section, it can be shown that the insured contemplated suicide at the time he made application for

the policy. That the company issuing the policy
sued upon, called itself a Life or an ·Accident Insur-
ance Company; that it had one or more departments
of business, or that the State required that the different
classes of insurance undertaken by one company, be
made separate departments of its business, or that
section 5855 was found, from its first adoption up to
the Revision of 1889, in the statute under the chapter
entitled "Life Insurance," are matters of no concern,
and serve to throw no light upon the meaning to be
given the words of section 5855, as likewise it may be
said, they in no way serve to obscure its purpose.
This section was not designed to limit the powers of a
particular *class of companies*, as such by name, but its
terms established a general rule, applicable to any
company whose contracts insure against death, and
which attempts to avoid liability in case of suicide,
except those companies doing business on the assess-
ment plan that were expressly exempted by reason of
the provisions of section 5869, Revised Statutes 1889,
of the act authorizing such companies to be organized
and prosecute business in this State, and the force of
that provision in favor of the assessment companies has
been stricken down by an act of the legislature in 1897,
so that the defense of suicide now is alike unavailing to
all companies issuing policies upon the life of a citizen
in this State, whether they be called life, accident or as-
sessment insurance companies. When a policy covers
loss of life from external, violent and accidental means
alone, why is it not insurance on life? Such a provision
incorporated in a general life insurance policy admittedly
would be insurance on life, then why less insurance on
life because not coupled with provisions covering loss of
life from usual or natural causes as well? If one holds a
general life policy and an accident policy, and is
killed by lightning or commits suicide, so that he may

be said to have died by accidental means, both the compaines should pay, and the stipulation against liability in the event of suicide in the policies should be no more a defense against the suit upon the accident policy, providing against death from accidental cause, than against the policy which goes further and covers death from other causes as well. No such exception or exemption is found in the plain and comprehensive language of section 5855.

Neither the enlarged provisions, covering death from the usual as well as the unusual or accidental causes, as in the ordinary life policy, nor the restricted provisions as in some accident policies covering liability for death alone from accidental causes, nor the insertion of an indemnity clause, in case of disability, in an accident policy covering death from external, violent or accidental means, in any wise affect the nature or construction of the provisions which are common to all the policies, and no good reason can be given why in one instance, the provisions of the policy covering death, should be said to be one of insurance on life, and in the others deny the same provision, the same construction, so as to avoid the force of a statute that provides that *in all suits upon policies of insurance on life hereafter, insured by any company doing business in this State*, it shall be no defense that the insured committed suicide. An examination of the various schemes of accident and life insurance must convince any one that although there are differences in the result sought of accomplishment in some particulars, there are many requirements and provisions in common to both and that the only substantial difference between the two plans of insurance on life is, that in the accident contract, death must result from a more limited number of causes than is covered by the other and broader contract of insurance on life, called life insurance con-

tracts. No rule of construction, short of one applied for distortion and destruction, can relieve accident insurance companies, issuing policies of insurance on life in this State, from the operation and influences of section 5855, which in plain and unambiguous terms declares that in all suits upon policies of insurance on life thereafter issued, it shall be no defense that the assured committed suicide, unless it shall have been shown to the satisfaction of the court or judge trying the cause that the insured contemplated suicide at the time of making his application for the policies, all stipulations in the policy to the contrary being void.

The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least divest the contract or policy of its chief character, of insurance on life, or make the contract other than life insurance. The promise to pay a weekly indemnity, by an insurance company, in the event the insured receives an injury from an accident not resulting in death, does not change the character of the agreement of the policy to pay a certain other sum when the accident results fatally, which is life insurance from accidental causes, as the promise to pay a certain stipulated sum to the insured (now contained in many of the policies issued by what is known as old line life insurance companies) when the insured attains a given age, or in a definite specified time, and if, before the insured arrives at the age designated, or before the time fixed for its certain payment, he shall die from any cause, accidental or otherwise, to pay his legal representatives or some one named in the policy as beneficiary the amount stipulated, is none the less life insurance because coupled with an investment or bond feature, not found in what is commonly known

as a straight life insurance policy.   The calling of a contract of insurance, an accident, tontine or regular life policy, or for that matter, by any other appellation that may be adopted for business or conventional uses or classification, can not make a policy containing an agreement to pay to another a sum of money designated upon the happening of an unknown or contingent event depending upon the existence of life, less a policy of insurance on life.

Insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon the loss of life.

The policy in controversy certainly corresponds to that definition, and must be held to be subject to the provisions of section 5855.

The judgment of the circuit court will be affirmed.
All concur.