EMMA WACKER, Respondent, v. THE NATIONAL
LIFE & ACCIDENT INSURANCE COMPANY
OF NASHVILLE, TENN., Appellant.

St. Louis Court of Appeals. Argued and Submitted May 6, 1919.
Opinion Filed July 1, 1919.

1. INSURANCE: Accident Insurance: Premiums: Waiver of Time of
Payment: Evidence. In an action on an accident insurance policy,
*held*, under the evidence in the case as to the time in which the
premium had been paid, it was proper for the court, as a matter
of law, to hold that there had been such a waiver of the time of
payment on the first of the month· and the continuance of the
policy in force, as to warrant the court in instructing the jury,
that on that issue defendant had failed in its defense.

2. ———: ———: ———: ———. It is a settled rule that the
doctrine of waiver by acts is applicable to societies as well as to
regular insurance companies, and is applicable to all conditions
in contracts which may be assumed to have been waived by a long
continued course of conduct between the parties themselves.

3. ———: ———: Suicide by Insane Person: Suicide no Defense.
Where the party who committed suicide was at the time insane,
then under an accident insurance policy recovery can be had and
section 6945 of the Revised Statutes of 1909 applies and it shuts
off the defense of suicide, even in an accident insurance policy.

4. ———: ———: Suicide by Sane Person: Suicide a Defense. Where
the party who committed suicide was at the time sane, then section
6945 of the Revised Statutes of 1909 does not apply, and in case
of suicide committed by a sane man, there can be no recovery
on an accident policy.

5. ———: ———: Sanity: Question for the Jury. In an action on an
accident insurance policy where the insured committed suicide,
the mere fact that the party committed suicide is no evidence one
way or the other of sanity or insanity, and that is a question
that must be submitted and determined by the jury even if not
raised at the trial.

6. TRIAL PRACTICE: Questions Raised in Trial Court: Demurrer to
the Evidence: Instructions. By the demurrer to the evidence inter-
posed at the close of plaintiff's case and again at the close of all
the evidence in the case, and in an instruction asked by defend-
ant and refused, the matter of the suicide of the insured was
raised in the lower court and that point was in the case.

7. **INSURANCE:** Accident Insurance: Sanity: Suicide as a Defense: Instructions. In an action on an accident insurance policy, where insured committed suicide, an instruction which left out of consideration the question as to the sanity or insanity of deceased at the time when he inflicted the mortal wound was error, and the instruction which the court gave, to find for plaintiff, as far as it may be said to cover this part of the case, was improper.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Kent K. Koerner,* Judge.

REVERSED AND REMANDED.

*Jones, Hocker, Sullivan & Angert,* and *Vincent L. Boisaubin* for appellant.

(1) The policy provided for monthly insurance and by its terms expressly limited the period of insurance to the calendar month in which the premium was paid. It was, therefore, not in force at the time of the suicide. The contract should be enforced as made. Record, pp. 9-20; Record, pp. 39-40; Pavlick v. Supreme Lodge, 199 S. W. 442-445 (St. Louis Court of Appeals). (2) There was no waiver and estoppel, because (a) Renewals were optional. Yett v. Oregon Surety & Casualty Co., 172 Pac. 486 (Ore.); Crosby v. Vermont Acc. Ins. Co., 80 Atl. 817 (Vt.). (b) Renewal premium for June was tendered after the death of the insured. Crawford v. North Am. Union, 193 Mo. App. 443; Horstmann v. Capitol Ins. Co., 194 Mo. App. 434, 2 Bacon on Ben. Soc., sec. 431; Scheele v. State Home Lodge, 63 Mo. App. 277; Carlson v. Am. Legion of Honor, 35 L. R. A. 643, 115 Cal. 466; Thompson v. Fid. Mut. Life Ins. Co., 6 L. R. A. (N. S.) 1039, 116 Tenn. 557; Lantz v. Vermont Life Ins. Co., 139 Pa. 546; National Mut. Ben. Association v. Miller, 85 Ky. 88; Mallory v. Met. Life Ins. Co., 97 Mich. 416. (3) The insured committed suicide while sane. This being a voluntary act, the death was not the result of accidental means, and suicide is, therefore, a defense.

Scales v. National Life & Accident Insurance Company, Mo. Sup. Court, Div. No. 2, April Term, 1918; Newell, Admr., Bergmann v. Fidelity & Casualty Company, Mo. Sup. Court, Div. No. 2, April Term, 1918.

*F. H. Bacon* for respondent.

REYNOLDS, P. J.—This is an action on an accident insurance policy. The petition, averring the incorporation of defendant under the laws of the State of Tennessee, as an accident insurance company and as such doing business in this State, and averring that plaintiff was the wife, and is the widow, of Frederick W. Wacker, after setting out the terms of the policy and compliance therewith by the insured, it is averred that the policy was maintained in force continuously from its date up to and including the month of June, 1915, a period of more than six years, by the payment of monthly premiums in advance therein provided for. Averring that Frederick W. Wacker died on the second day of June, 1915, and that his death was the result, directly and independently of all other causes, of bodily injury effected through external, violent and accidental means, to-wit, by a pistol shot, and averring the amount due on the policy and defendant's refusal to pay, and that the refusal to pay was vexatious and without reasonable cause, judgment is asked for the amount of the policy, for ten per cent of the principal sum as damage for vexatious refusal to pay, and for a reasonable attorney's fee.

The answer, admitting the incorporation of the defendant and the issue of the policy insuring the life of Wacker against death resulting directly and independently of all other causes from bodily injuries effected through external, violent and accidental means, admits that on June 2, 1915, Wacker died, and denies that at the time of his death the policy of insurance was in full force and effect, and denies each and every other allegation in the petition, further averring that

the policy of insurance had expired by reason of the non-payment of the premiums thereon at a time prior to the death of Wacker.

In her reply plaintiff denies that the policy had expired by reason of the non-payment of premiums, as alleged, and avers that by reason of defendant's course of dealing with Wacker in collecting premiums after the time specified for the payment thereof, defendant had established a course of dealing for receiving the payments after due, whereby Wacker was misled, and if any of the premiums were not paid at the time they were due it was because of this course of dealing, by reason of which the defendant is estopped from claiming the policy was not in force at the time of the death of Wacker, the premiums having been duly tendered to defendant within the time established by the course of dealing for the payment thereof.

At a trial before the court and jury there was a verdict in favor of plaintiff for her damages assessed at $440, as also for the sum of $40 for vexatious refusal to pay, and the sum of $150 as a reasonable attorney's fee, a total of $630. Judgment following, defendant, filing a motion for a new trial and excepting to the action of the court in overruling it, has duly appealed.

At the trial the policy, which was introduced in evidence by plaintiff, bears date Nashville, Tenn., April 21, 1908, and contains, among other provisions, these, which are the ones necessary to be here considered:

First, that the defendant, in consideration of the policy fee, premium and statements, warranties and agreements in the schedules indorsed on the policy and made a part thereof, ''Does hereby insure Frederick W. Wacker, . . . subject to the provisions, conditions and limitations herein contained and indorsed thereon, from 12 o'clock, noon, standard time, of the day this contract is dated, until 12 o'clock, noon, standard time, of the first day of June, 1908, and for

such further periods, stated in the renewal receipts, as the payment of the premium specified in said schedule will maintain this policy and insurance in force," the insurance being against disabilities and death "resulting directly and independently of all other causes from bodily injuries effected through external, violent and accidental means."

Second: "In the event of injury or loss, fatal or otherwise, . . . or death or disability due to or resulting, directly or indirectly, from injuries intentionally inflicted upon the assured by himself or by any other person, or from injuries inflicted upon the assured by himself, or received by him while insane, . . . the limit of the company's liability shall be one-fifth of the amount that would be otherwise payable under this policy, anything herein to the contrary notwithstanding."

The policy further stipulated that if the payment of any renewal premium shall be made after the expiration of the policy or of the last renewal receipt, neither the assured nor the beneficiary shall be entitled to recover for any accidental injury happening between the date of any such expiration and 12 o'clock, noon, standard time, of the day following the date of said renewal payment nor shall the acceptance of an overdue premium or premiums constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in this contract and that the acceptance of any renewal premiums shall be optional with the company.

It was provided that the monthly premium, one dollar, was to be paid in advance, without notice, it being stipulated that premiums were due on the first day of each month in advance and must be paid either at the home office of the company or to such persons as may be designated by the company in writing to receive them.

A letter to defendant was introduced in evidence, of date June 5, 1915, in which the writer stated that he inclosed his personal check for a dollar, in payment of the assessment on the Wacker policy for June, 1915, the letter notifying defendant that Wacker had shot himself on the second of June and had been buried on the 4th, and asking for blanks to make out proofs of death. The company answered this, returning the dollar but declining to send blanks, the letter signed by the superintendent of the company, and stating that he wished to notify the party that it "will not be necessary to forward the blank claim papers you mention in your letter as the policy was out of benefit at the time he (Wacker) was shot and the company has no liability as you will see by referring to the conditions set out in said policy."

Plaintiff, examined as a witness, testifying that the insured was her husband, both of them residing in St. Louis, stated that he died on June 2, 1915. Asked, "Now what was the cause of his death," witness answered, "Nervous breakdown through work." Counsel for defendant stated that he objected to that, whereupon counsel for plaintiff asked witness, "What was the immediate cause," to which she answered, "He shot himself right in the mouth . . . the second day of June, at 9 o'clock in the morning." She further testified that she had paid most of the premiums.

Plaintiff introduced in evidence books provided by defendant, in each of which was printed: "This book must always be presented to the collector when paying premiums, and receive his signature, which is a receipt for same." There were three of these books, being the receipts of monthly premiums covering the years 1908 to 1915. By these books it appears that in 1908, eight of the premiums paid that year were not paid on the first day of the month due; only five of them were paid on the first of the month; for 1909, three were paid after the first of the month in which they were due;

for 1910, nine were paid after the first of the month due; for 1911, eight were paid after due, some of them paid very near the end of the month; for 1912, all but one were paid after the first of the month, running from two to five days after the first of the month; for 1913, all but three were paid after the first of the month, one paid on the 28th of the month following it was due, one on the 29th, and one on the 31st; for 1914, all but one were paid after the first of the month in which they were due, one of them paid on the 28th, another on the 30th; for 1915, the payment due January was paid on the 5th; that due February was paid on the 3rd; that due March was paid on the 4th, and the one that was tendered after his death, as before stated, was tendered June 5th and returned June 8, 1915.

Plaintiff offered and introduced in evidence, over the objection of defendant, the certificate from the Bureau of Vital Statistics of the State, in which it was set out that the cause of death was ''Hemorrhage of brain due to gunshot wound. Suicide.'' This was signed by the Deputy Coroner of the city of St. Louis.

There was evidence on the part of plaintiff as to the reasonable fee for the attorney, a witness testifying that a reasonable attorney's fee would be $150.

At the close of plaintiff's evidence defendant offered a demurrer, which was overruled.

Beyond introducing a certificate of health of the insured, dated February 11, 1914, and some evidence as to receipt of past due premiums by defendant, defendant introduced no evidence here necessary to consider.

Plaintiff introduced what she called evidence in rebuttal, not here material.

At the close of all the evidence, defendant again unsuccessfully demurred.

The court, at the instance of plaintiff, instructed the jury, first, that under the pleadings and evidence in the case, plaintiff was entitled to recover the principal

amount of $400, and an additional ten per cent. for the twelve months prior to the death of Wacker such policy was in force. A second instruction was as to vexatious delay. As no error is assigned as to this, we do not consider either that, or the question of vexatious delay and refusal to pay.

It is not necessary to set out the instructions asked by defendant and refused.

The points urged by appellant are, first, that the policy provided for monthly insurance and by its terms expressly limited the period of insurance to the calendar month in which the premium was paid, and it was therefore not in force at the time of the suicide; second, that there was no waiver or estoppel, because, first, renewals were optional; second, the renewal premium for June was tendered after the death of the insured; and, third, that the insured committed suicide while sane, and that this being a voluntary act, the death was not the result of accidental means and suicide is therefor a defense.

Under the evidence in the case as to the time in which the premiums had been paid, we think that it was proper for the court, as a matter of law, to hold that there had been such a waiver of the time of payment on the first of the month and the continuance of the policy in force, as to warrant the court in instructing the jury, as a matter of law, that on that issue defendant had failed in its defense. As we had occasion to say in Zahm v. Royal Fraternal Union, 154 Mo. App. 71, l. c. 82, 133 S. W. 374, cases are so numerous, decided by the Supreme Court of our State, by our Appellate Courts, as well as by the United States Supreme Court and courts of other States, on the rule of waiver by act of receiving premiums after the time they were due that it is unnecessary to attempt to enumerate or quote from them. As we also said in that case, "It is a settled rule in all of these cases that the doctrine of waiver by acts is applicable to these

societies as well as to regular insurance companies; for that matter, is applicable to all conditions in contracts which may be assumed to have been waived by a long continued course of conduct between the parties themselves.'' A few of the cases from our own courts in support of this proposition are those of McMahon v. Supreme Tent Knights of the Maccabees of the World, 151 Mo. 522, 52 S. W. 384; Goedecke v. Metropolitan Life Ins. Co., 30 Mo. App. 601; Wagaman v. Security Mutual Life Ins. Co., 110 Mo. App. 616, 85 S. W. 117; Hawkins v. Woodmen Accident Ass'n, not to be officially reported, but see 204 S. W. 566, the latter a case on its facts very much like the one at bar. The court could direct the jury that the acts of defendant constituted a waiver, as a matter of law. So far as this instruction covered that it was correct.

But the instruction goes further than that; in effect, it is an instruction for the jury to find for plaintiff for the full amount, on the assumption that suicide was no defense in an accident policy. That is not now held to be the law, although for many years the bench and bar have assumed that it was, on the authority of Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948. But under the recent holdings of our Supreme Court in Scales v. National Life & Accident Ins. Co.; Newell, Admr., v. Fidelity & Casualty Co., and Brunswick v. Standard Accident Ins. Co., all of which have been decided by our Supreme Court in banc but none of which have yet been reported, if the party who committed suicide was at the time insane, then under an accident insurance policy, a recovery can be had, and section 6945 of our statutes applies; that is to say, it shuts off the defense of suicide, even in an accident insurance policy; whereas, if the party at the time was sane, then this section does not apply, and in case of suicide committed by a sane man, there can be no recovery on an accident policy. That we understand to be the ruling of our Supreme Court in the three cases referred to and they are the last utterance of that

tribunal on this matter. It follows, therefore, that while this question of sanity or insanity was not gone into nor developed at the trial, the mere fact that the party committed suicide is no evidence one way or the other of sanity or insanity, and that is a question that must be submitted and determined by the jury, even if not raised at the trial, as was the situation in the Brunswick Case, supra. In the case at bar the plaintiff was asked what was the cause of the death of her husband and she answered, "Nervous breakdown through work." Whether that resulted from such condition as to render him irresponsible or insane when he took his life, was not gone into, counsel and court assuming on the one hand that suicide, under section 6945, Revised Statutes 1909, was no defense, and on the other hand that this so called "suicide statute," was not applicable to accident insurance.

Learned counsel for the respondent claims that the matter of suicide was not raised in the lower court. That is true in a way, but by the demurrer to the evidence interposed at the close of plaintiff's case and again at the close of all the evidence in the case, and in an instruction asked by defendant and refused, it is apparent that the point was in the case. Thus, the defendant asked the court to instruct the jury that the plaintiff was not entitled to recover unless the insured died as the result of injuries effected through external, violent and accidental means, alone and independent of all other causes; and that the burden of proof was on plaintiff to show to the satisfaction of the jury that the death was caused by external, violent and accidental means alone, independent of all other causes; that unless the jury believed that plaintiff had established by a preponderance of the testimony that the death of the insured was caused by external, violent and accidental means alone, independent of all other causes, their verdict must be in favor of defendant. This left out of consideration all question as to sanity or insanity of the deceased at the time when he in-

flicted the mortal wound, which our Supreme Court, in the Brunswick Case, holds must be considered. The learned trial court, in the instruction which it gave to find for plaintiff, evidently ignored this distinction and for that reason the instruction which it gave, as far as it may be said to cover this part of the case, was improper.

It follows that the judgment of the circuit court must be reversed and the cause remanded for further proceedings in accordance with the law as here indicated and as laid down in the late decisions of our Supreme Court which we have cited above.

*Allen* and *Becker, JJ.*, concur, *Allen, J.*, in result.