Alfred **KASKOWITZ** and Leah Rose Kaskowitz (Plaintiffs), Respondents,

v.

**AETNA LIFE INSURANCE COMPANY**, a Corporation (Defendant), Appellant.

No. 30079.

St. Louis Court of Appeals.

Missouri.

July 8, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 3, 1958.

Hocker, Goodwin & MacGreevy, St. Louis, John M. Goodwin and Harold B. Bamburg, St. Louis, of counsel, for appellant.

Harry J. Stadin, and Louis E. Zuckerman, St. Louis, for respondents.

ANDERSON, Judge.

This is an action brought to recover an accidental death benefit provided for in a policy of life insurance issued by appellant insuring the life of plaintiffs' son, Jacob Kaskowitz. The natural death benefit of $1,000 has been paid. The accidental death benefit provision appears in a double-indemnity rider attached to the policy and provides payment for an additional $1,000 in the event insured's death was accidental as therein limited. Said provision reads as follows:

> "If the death of the insured occurs while this policy is in full force and before the first anniversary of the date of this policy which follows the sixty-fifth anniversary of the insured's birth, and if such death results, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, and occurs within ninety days from the date of the accident causing such injuries and if such injuries are evidenced by a visible contusion or wound on the exterior of the body * * *, and if, without limiting the generality of the foregoing conditions, such death does not result from any one or more of the excepted causes nor occur during any excepted period, as hereinafter set forth, then, immediately upon receipt of due proof thereof, the Company will pay One thousand Dollars ($1,000), in addition to the insurance

payable under this policy for natural death.

"This provision does not apply to death of the insured

"(a) Resulting from suicide or any attempt thereat while sane or insane;

"(b) Resulting directly or indirectly, wholly or partly, from bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections occurring simultaneously with or through an accidental cut or wound) or any other kind of disease, even though the proximate or precipitating cause of death is accidental bodily injury;

"(c) Resulting directly or indirectly from medical or surgical treatment for any kind of disease;

"(d) Resulting from war (declared or undeclared) or insurrection, or any event incident to either;

"(e) Resulting directly or indirectly from travel or flight in any species of aircraft except as a fare-paying passenger in a licensed passenger aircraft operated by a licensed pilot for a licensed passenger carrier on a regular passenger route on a scheduled trip between definitely established airports; or occurring while in any vessel for submarine navigation;

"(f) Resulting directly or indirectly from participating in a riot or committing or attempting to commit an assault or felony; or

"(g) Resulting directly or indirectly from any poison, gas or fumes, voluntarily or involuntarily, accidentally or otherwise, taken, administered, absorbed or inhaled."

The defense pleaded was that insured died as a result of "suicide" while afflicted with a mental infirmity and disease, and that such death was excluded under the terms of the policy.

The cause was tried before a jury on November 26th and 27th, 1956, and resulted in a verdict for plaintiffs. The court refused to accept the verdict, on account of error, and ordered a mistrial. Thereafter, the parties agreed to waive a jury and to submit the cause to the court for determination upon the evidence and proof previously adduced at the trial. The court found for plaintiffs for $1,000, plus interest in the amount of $247.67, or total amount of $1,247.67. Thereafter, defendant filed its motion for judgment or, in the alternative, for a new trial. This motion was overruled and defendant appealed.

The trial court made findings of fact which are fully supported by the evidence, and are the facts which will be accepted as true in the determination of this appeal. Said findings were as follows:

"1. On May 6, 1946, defendant, Aetna Life Insurance Company, a corporation, issued its Policy No. P870718, insuring the life of Jacob Kaskowitz in the amount of $1,000, and for an additional premium of 64¢ payable twice per year, which amount was included in the total premium of the aforementioned insurance policy, an additional indemnity provision in the sum of $1,000 was attached to the aforesaid insurance policy.

"2. Said policy was in full force and effect on October 11, 1952, and the named beneficiaries were plaintiffs, Leah Rose Kaskowitz and Alfred Kaskowitz.

"3. On October 11, 1952, the insured, Jacob Kaskowitz, died as a result of bodily injuries sustained directly when he jumped from the sixth floor of the Missouri Theatre Building in St. Louis, Missouri. The bodily injuries were evidenced by visible contusions upon the body of the insured.

"4. Following the death of the insured, defendant made payment of $1,000 natural death benefits to plain-

tiffs without any prejudice to the rights of plaintiffs to claim under the double indemnity provision of said insurance policy for the additional $1,000 accidental death benefit.

"5. Plaintiffs have performed all conditions of said policy with regard to notification and proofs of death.

"6. The death of insured was the result of said insured's self-destruction while he was afflicted with a mental infirmity.

"7. Prior to and at the time of his death, the insured was insane in that he was suffering from a disease of the mind, which mental disease caused the insured to take his own life."

The court made the following conclusions of law:

"It is the Court's opinion and it does find that under the laws of the State of Missouri (Section 376.620 R.S.Mo. 1949 [V.A.M.S.]), plaintiffs are entitled to recover against the defendant under the double indemnity and accidental death benefit of the life insurance policy which is the subject matter of this controversy."

For some time prior to his death insured had been treated by Dr. Arnold Block, a psychiatrist. Dr. Block was called as a witness by plaintiffs. He testified that insured was suffering from a mental illness which he characterized as schizophrenic reaction type insanity. He also stated that as a part of that condition insured suffered from an impulse to destroy himself. He gave the following testimony:

"Q. In your opinion, sir, considering the experience that you have had in this field of psychiatry and treatment, and your knowledge of the past dealings and past history of Jacob Kaskowitz, could you say, Doctor, with reasonable medical degree of certainty, * * * whether the jumping from the building was caused directly from the mental condition that he was suffering from at the time? A. I would, sir.

\* \* \* \* \* \*

"Q. In other words, assuming those same facts, his death would have been the result of the mental illness or disease that he was suffering from at the time? A. Yes, sir."

The sole question for consideration on this appeal is whether beneficiaries under an accident policy which expressly excludes coverage for death caused by mental disease may recover the death benefit where insured, by reason of his insanity, took his own life. This, in turn, depends upon whether the so-called suicide statute (section 376.620 RSMo 1949, V.A.M.S.) operates to avoid the exception relied upon by the appellant. That section reads as follows:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

In construing this section our Supreme Court has held that an accident policy providing for payment in the event of accidental death is to that extent a life insurance policy. Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948. It has also been held that the taking of one's life while insane is an accident. Brunswick v. Standard Accident Ins. Co. of Detroit, Mich., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213; and that any clause in a policy which excepts liability for death self inflicted while insane is rendered void by the express provision of § 376.620, supra. Logan v. Fidelity & Casualty Co.,

supra; Brunswick v. Standard Accident Ins. Co. of Detroit, Mich., supra; Whitfield v. Aetna Life Ins. Co., 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895.

■ However, it has been held that the suicide statute may not be availed of to extend coverage to a class of accidents not covered by the policy. Scales v. National Life & Accident Ins. Co., Mo.App., 186 S.W. 948; Brunswick v. Standard Accident Ins. Co. of Detroit, Mich., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213; Fields v. Pyramid Life Ins. Co. of Topeka, Kansas, 352 Mo. 141, 176 S.W.2d 281.

The Fields case was a suit on a double indemnity provision of a life insurance policy which provided that in the event of death by accident the additional amount would be payable "provided such death results solely from bodily injuries, caused directly, exclusively or independently of all other causes by external, violent and purely accidental means * * * and shall not be the result of homicide, nor be caused directly or indirectly by self-destruction while sane or insane, poisoning, septicemia, infection, disease or illness of any kind, physical or mental infirmity, * * *." There was a plea by the defendant that, insured having died from the effects of poison, plaintiff could not recover. The trial court at the close of the opening statement of plaintiff's counsel directed a verdict for defendant. The facts as they appeared from the pleadings and opening statement were that insured, while insane, drank lysol, a deadly poison, and that his death resulted therefrom. Upon appeal, the Kansas City Court of Appeals, 169 S.W.2d 111, affirmed and held there could be no recovery by plaintiff for the reason the policy expressly excluded from coverage death caused by poisoning. The cause was then transferred to the Supreme Court on the ground that the opinion therein was in conflict with Applegate v. Travelers' Ins. Co., 153 Mo.App. 63, 132 S.W. 2, an opinion by this court. The Supreme Court, in an opinion by Bohling, C., upheld the

Kansas City Court of Appeals. The court said: (176 S.W.2d loc. cit. 281–283)

"Plaintiff's position is that insured's death was an accident under the Missouri law, that the policy provision excepting liability in the event of 'poisoning' has reference to poisoning while sane, and that plaintiff is entitled to recover.

"Insurer defends on the ground, since all concede insured's death resulted from 'poisoning', that insured's death was not within the coverage of the policy, and that Sec. 5851 [V.A.M. S. § 376.620] has no application to the instant issue.

\*    \*    \*    \*    \*    \*

"Observations in our opinions refute the beneficiary's argument that 'if the policy undertook to exempt from coverage or from liability "poisoning by an insane person" it is contrary to Sec. 5851.' Vide: 'The statute does not put into the policy a single obligation other than those mentioned in the policy. It merely takes out of the policy the defense of suicide as to the obligations mentioned in that policy.' Scales v. National Life & Acc. Ins. Co. (Mo.Sup.Banc), 212 S.W. 8, 9. 'In short, as forecast above, the section does not write into an accident policy a cause of action where none existed upon the facts.' Brunswick v. Standard Acc. Ins. Co. (Banc), 278 Mo. 154, 169, 213 S.W. 45, 49, 7 A.L.R. 1213. \* \* \* The beneficiary advances no argument convincing us that the result, or the reasoning of Farrington, J., in Scales v. National L. & Acc. Ins. Co., Mo.App., 186 S.W. 948, is erroneous. It is in harmony with observations of court en banc in the Scales and Brunswick cases, supra. Briefly: If Sec. 5851 merely eliminates the defense of suicide and writes into an accident insurance policy no cause of action not therein created, it follows that no liability is created by said sec-

tion in the event of suicide by poison, sane or insane, under policy provisions expressly excepting liability in the event of death by poison. Otherwise, the statute not only adds an obligation to the policy but adds an obligation explicitly excluded therefrom. * * * The Applegate case, supra, is overruled to the extent indicated."

In Scales v. National Life & Acc. Ins. Co., Mo.Sup., 212 S.W. 8, the court merely held that suicide by a sane person was not an accident, but in passing said: (loc. cit. 9, 10)

> "That statute does not put into the policy a single obligation other than those mentioned in the policy. It merely takes out of the policy the defense of suicide as to the obligations mentioned in that policy."

The Colorado case of New York Life Ins. Co. v. West, 102 Colo. 591, 82 P.2d 754, 755, is cited in the Fields case as an authority supporting the views therein expressed. In the Colorado case plaintiff sued for an accidental death benefit provided for in a policy of life insurance. Insured died as a result of taking poison while insane. The provision in question read:

> "Double Indemnity shall not be payable if the insured's death resulted from self-destruction whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise."

The Colorado suicide statute read:

> "The suicide of a policy-holder * * * shall not be a defense against the payment of a life insurance policy, * * * whether said policyholder was sane or insane." C.L.1921, § 2532.

It was held that, since the policy excluded all liability for death by poison, plaintiff was not entitled to recover. The court said: (82 P.2d loc. cit. 756)

> "It seems clear to us that it is within neither the intention nor the power of the Legislature or courts to compel an insurance company to write a policy, or prevent it from limiting a policy written to any specific accident or class of accidents. It may cover or exclude death by any means. That proposition is impregnable in reason, unanimously supported by the authorities, and untouched by public policy. The law simply says that every death of a sane person, not self inflicted, which creates a liability, shall likewise create a liability where death is self inflicted by an insane person. But if, by the express terms of the policy, liability is excluded in the first instance it is excluded in the second. The fact that one who dies by poison took it with suicidal intent while insane does not bring him within the terms of a policy which does not insure against death by poison. The company's defense here is simply death by poison, against which it did not insure, and the real question is, May Mrs. West prove suicide insane and thereby convert a policy which did not cover death by poison into one which does? Certainly not."

See also, McReynolds v. New York Life Ins. Co., 8 Cir., 122 F.2d 895.

Under the decisions, as we read them, the effect of the suicide statute is not to create a cause of action on account of suicide, but to prevent a defense of suicide where, under the terms of the contract, liability would exist if death had occurred in the same manner and from the same cause if there had been no suicide. In the case at bar the policy excludes all accidental deaths resulting from mental infirmity. Thus, where an insane person, by reason of his insanity, places himself in a dangerous situation and as a result of that act suffers an accidental death, no recovery can be had. Suppose the insured

had in this case jumped from the window, not in response to an impulse to destroy himself, but to prove as true an insane belief that he could fly. Would there be liability under the terms of the policy? We think not. The purpose of the policy exclusion was not just to make suicide a defense, but to exclude coverage of all accidental deaths caused by mental illness. The reason for the exclusion was, no doubt, the increased likelihood of accidental injury to persons of unsound mind, and since it is all inclusive as to a particular class of accidents, the suicide statute cannot effect its removal. A case squarely in point adopting this view is Vann v. Union Central Life Ins. Co., 10 Cir., 140 F.2d 611.

In the Vann case plaintiff brought suit for an accidental death benefit under a life insurance policy. Insured committed suicide while insane. Death by accident was defined as death resulting "directly, independently and exclusively of all other causes, from bodily injury effected solely through accidental, external and violent means, * * *; provided that death occurring * * * as a result directly or indirectly of any bodily or mental disease or infirmity * * * or by suicide while sane or insane, or as the result directly or indirectly of injuries intentionally inflicted by the insured, is not an accident hereby insured against." The policy was a Colorado policy and at the time of its issuance there was in force a Colorado statute, Laws 1913, c. 99, § 59, which provided that "suicide of a policyholder of any life insurance company * * * shall not be a defense against the payment of a life insurance policy, whether the suicide was voluntary or involuntary, and whether said policyholder was sane or insane." The court held that plaintiff was not entitled to recover. The court said: (loc. cit. 612)

"The double indemnity provisions of the policy excluded death occurring as a result directly or indirectly of any mental disease or infirmity. The death of the insured by his own hand while insane resulted from mental infirmity. Mandles v. Guardian Life Ins. Co., 10 Cir., 115 F.2d 994, affirming, D.C., 32 F.Supp. 619."

Plaintiff relies upon the case of Spillman v. Kansas City Life Ins. Co., 238 Mo. App. 419, 180 S.W.2d 605, a decision by the Kansas City Court of Appeals. In that case defendant issued two life insurance policies to Carl Spillman. Plaintiff was designated as beneficiary in each policy. Insured died as a result of a gunshot wound, self-inflicted while insane. The policy did not exclude coverage for death from gunshot wounds, but did provide that there would be no liability for death resulting from self-destruction while sane or insane, or directly or indirectly from disease or infirmity. There was a verdict and judgment for plaintiff, and upon defendant's appeal it was urged that its demurrer to the evidence should have been sustained for the reason that it was shown that insured's death was indirectly, at least, due to disease. The court rejected this contention by application of the maxim, causa proxima non remota spectatur. In applying this maxim the court said that, in determining whether the cause of death was accidental, the law would not go further back in the line of causation than to find the active, efficient, procuring cause, which was the accidental discharge of the gun.

The Spillman case is distinguishable from the instant case for the reason that the disease exclusion clause in the policy there sued on did not contain the concluding words of clause (b) in the policy here involved, excepting coverage "even though the proximate or precipitating cause of death is accidental bodily injury."

In the Spillman case the Supreme Court granted certiorari, but the writ was quashed (State ex rel. Kansas City Life Ins. Co. v. Bland, 353 Mo. 726, 184 S.W.2d 425). The court held that the opinion of the court of appeals did not conflict with any previous decision of the Supreme Court. The court

also held that the policy provision there under consideration was ambiguous and susceptible to the construction which the court of appeals put upon it. As pointed out, supra, the terms of the policy here sued on are quite different from those in the Spillman case.

 In our judgment, there is no ambiguity to be resolved in favor of coverage in this case. Fields v. Pyramid Life Ins. Co. of Topeka, Kansas, 352 Mo. 141, 176 S.W.2d 281. The trial court erred in finding for plaintiff. The judgment appealed from is reversed.

RUDDY, P. J., and WOLFE, J., concur.