Frances B. SOMMER, Respondent,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Appellant.

No. 54658.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1970.

Richard M. Stout, Kirkwood, and Kent E. Karohl, St. Louis, for respondent.

Fordyce, Mayne, Hartman, Renard & Stribling, P. Terence Crebs, St. Louis, for defendant-appellant.

FINCH, Judge.

Plaintiff, the beneficiary in two life insurance policies which provided additional benefits in the event of death by accidental means, brought suit thereon, claiming her husband died as a result of an accident. Trial before the court without a jury resulted in a judgment for $3,325.00 ($1,000.00 principal, $312.50 interest, $100.-00 penalty, and $250.00 attorney's fees on each policy). Defendant appealed to the St. Louis Court of Appeals, which reversed. We ordered the case transferred to this court and it will be determined here "the same as on original appeal." Rule 84.05(h), V.A.M.R.; Mo.Const., Art. V, § 10 (1945), V.A.M.S. We reverse and remand with directions to enter judgment for the accidental death benefit, plus interest, on each policy.

The facts are simple and were stipulated. Insured died December 6, 1961, as the result of a self-inflicted gunshot wound in the head. At the time of death, he had lost contact with reality (a mental infirmity), which was stipulated to be insanity. The parties also stipulated that if insured had not lost contact with reality, he would not have taken his life.

It has been held that the taking of one's own life while insane is an accident. Brunswick v. Standard Accident Ins. Co. of Detroit, Mich., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213. Hence, the insured died as the result of an accident and his death is covered by the policies unless excluded by some permissible policy provision.

The accidental death provision in the first policy sued upon is as follows:

*"Accidental Means Death Benefit*— The Company promises to pay to the Beneficiary under this Policy, in addition to the amount otherwise payable according to the terms of this Policy, an additional sum equal to the Amount of Insurance shown on page 1, upon receipt at the Home Office of due proof of the death of the Insured, while this provision is in effect, as the result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means, and that such death shall not have occurred (a) more than 90 days after the date of such injuries, or (b) as the result of or by the contribution of disease or bodily or mental infirmity or medical or surgical treatment therefor or infection of any nature unless such infection is incurred through an external visible wound sustained through violent and accidental means, or (c) as the result of self-destruction, whether sane or insane, or (d) as the result of travel or flight on any species of aircraft except as a fare-paying passenger on a regularly scheduled passenger flight of a commercial aircraft, or (e) as a result of participating in or attempting to commit an assault, or (f) while the Insured is in the military, naval, or air forces of any country at war."

The comparable provision in the other policy sued upon varied slightly in terminology, but exclusion (b), with which we are concerned in this case, was identical with (b) in the provision quoted above.

It is clear that the producing cause of insured's death was a gunshot wound in the head, a nonexcluded cause of death under the terms of the policies. Nevertheless, it is defendant's position that insured's mental infirmity (insanity) contributed to cause his death, so as to make exclusion (b) applicable. Obviously, this mental infirmity entered into what oc-

curred only in that it affected the functioning of insured's mind, moving him to decide to take his own life. We must determine, therefore, whether death by self inflicted gunshot wounds, the decision to inflict which was induced by insured's insanity, is eliminated from coverage by exclusion (b) of the policies.

This question has been considered previously, with differing results, by the Kansas City and the St. Louis Courts of Appeal. In Spillman v. Kansas City Life Ins. Co., 238 Mo.App. 419, 180 S.W.2d 605, decided by the Kansas City Court of Appeals, recovery under the accidental death provisions of an insurance policy was sought on account of the death of the insured from a self-inflicted gunshot wound. The policy sued upon contained an exclusionary provision which provided "that there shall be no liability hereunder for death resulting from self-destruction, while sane or insane, * * * or directly or indirectly, wholly or in part, from * * * any kind of illness, disease or infirmity, * * *". Testimony was presented that insanity is a mental illness or disease, and the insurance company argued that since insured would not have taken his life except for the disease of insanity from which he suffered, his death was due, indirectly at least, to illness. In affirming a judgment for plaintiff, the opinion held that the law would not go back in the line of causation further than to find the active, efficient, procuring cause of death, which was determined to have been the gunshot wound. The court also concluded that to construe the exclusion otherwise would be to disregard the provisions of Missouri's so-called suicide statute, then § 5851, RSMo 1939, but now designated as § 376.-620, (all references are to RSMo 1959, V.A.M.S., unless otherwise indicated).[1]

Kansas City Life Insurance Company sought by certiorari to the Supreme Court to have the Spillman opinion reviewed and quashed. It contended that Spillman conflicted with the decision of this court in Fields v. Pyramid Life Ins. Co. of Topeka, Kan., 352 Mo. 141, 176 S.W.2d 281. In Fields the insured, while insane, took his life by self-administered poison. The policy expressly excluded all deaths caused by poisoning and the company denied liability on that basis. It did not rely on suicide as a defense or claim that insanity was the cause of death. This court recognized that a policy may contain exclusions from coverage provided they do not contravene the public policy of the state and denied recovery on the ground that poisoning was the producing cause of death. Missouri's suicide statute (§ 376.620) was held to have no application. The court concluded that Spillman was not in conflict with Fields or any other decision of the Supreme Court and the writ of certiorari was quashed as improvidently issued. State ex rel. Kansas City Life Ins. Co. v. Bland, 353 Mo. 726, 184 S.W.2d 425.

The question next arose in the St. Louis Court of Appeals in Kaskowitz v. Aetna Life Ins. Co., Mo.App., 316 S.W.2d 132. In that case the insured committed suicide by jumping from the sixth story window of an office building. The policy contained the following exclusions from coverage: "(a) Resulting from suicide or any attempt thereat while sane or insane; (b) Resulting directly or indirectly, wholly or partly, from bodily or mental infirmity * * * even though the proximate or precipitating cause of death is accidental bodily injury; * * *." The defense pleaded was that insured's death resulted from suicide while he was afflicted with a mental infirmity or disease and hence

---

[1]. § 376.620 is as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

the death was excluded from coverage. The court, while recognizing that § 376.620 makes void any clause excepting liability for suicide while insane, nevertheless denied recovery, saying, 1. c. 137: "In the case at bar the policy excludes all accidental deaths resulting from mental infirmity. Thus, where an insane person, by reason of his insanity, places himself in a dangerous situation and as a result of that act suffers an accidental death, no recovery can be had." On this basis, the court concluded that the case was not governed by § 376.620.

In Ieppert v. John Hancock Mutual Life Ins. Co., Mo.App., 347 S.W.2d 436, the insured, while insane, hanged himself. The policy provided for nonliability if death resulted directly or indirectly from bodily or mental disease or infirmity. The trial court ruled for defendant on motion for summary judgment, holding that insured met his death indirectly or in part from mental diseases or infirmities. The St. Louis Court of Appeals, citing Kaskowitz, affirmed, saying, 1. c. 446: "It is clear from the evidence that insured's mental infirmity was the condition which brought about the final result, namely, the death of the insured, and was the proximate cause thereof as that term is understood in the law."

Defendant, for its defense in this case, also relies on the mental defect of insanity of insured which caused him to shoot himself. However, in asserting that defense, it does not rely upon exclusion (c) in the policies which specifically excluded from coverage any accidental death resulting from self-destruction while insane. Defendant's brief pointedly states that it does not rely on (c). This is understandable because the general assembly, by the enactment of § 376.620, has declared it to be the public policy of this state that an insurance company may

not provide for nonliability on the basis that an insured committed suicide while insane. Such statutory provision has been upheld in various cases, including Brunswick v. Standard Accident Ins. Co. of Detroit, Mich., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213, and Whitfield v. Aetna Life Ins. Co., 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895.

■ The question, then, is whether exclusion (b), on which defendant does rely, permits it to escape liability on the ground that insured committed suicide while insane, even though it may not do so under exclusion (c). We hold that it may not. The words referring to death "as the result of or by the contribution of disease or bodily or mental infirmity" which appear in (b) have reference to instances in which "disease or bodily or mental infirmity" is a producing cause of death. To construe the exclusion as applying also to insanity of an insured which merely induces him to commit suicide would mean that the exclusion "goes not to the *means* of death, but to the very *condition* on which all recovery for suicide under an accident policy is based, i. e., mental disease and infirmity."[2] So construed, any insurance company, merely by inserting exclusion (b) or a clause substantially similar, could and would completely nullify § 376.-620 and thereby defeat the declared public policy of this state. This they may not do.

In so far as they are inconsistent with this opinion, Kaskowitz v. Aetna Life Ins. Co., Mo.App., 316 S.W.2d 132, and Ieppert v. John Hancock Mutual Life Ins. Co., Mo.App., 347 S.W.2d 436, no longer should be followed.

■ There remains only the question of the propriety of the action of the trial court in assessing, pursuant to § 375.420,

2. This analysis appears in a note in 1959 Washington Law Quarterly, 183, 186, in a discussion of the interpretation in Kas-kowitz v. Aetna Life Ins. Co., supra, of the exclusion provisions of the insurance policy.

a penalty of $100.00 and an attorney's fee of $250.00 upon each of the policies sued upon. We conclude that defendant company was justified in refusing to pay the accidental death claims in question and that its conduct was not vexatious.

As previously noted, there are three Missouri appellate court decisions deciding the issue of coverage presented in this case. The first one was the Spillman decision by the Kansas City Court of Appeals. This court, in State ex rel. Kansas City Life Ins. Co. v. Bland, supra, refused to quash that opinion and held that its writ of certiorari was improvidently granted. Such decision did not constitute an approval by this court of the decision or reasoning in Spillman. It amounted only to a holding that Spillman did not conflict with any decision of the Supreme Court of Missouri and that the Kansas City Court of Appeals had a right to decide the case as they did. This clearly appears from the language at l. c. 427 of 184 S.W.2d, where the court said: "Respondents were fully authorized to chart their own course in holding suicide while insane was not excluded by the provision excluding death resulting from disease." Thereafter, the St. Louis Court of Appeals, in Kaskowitz, and later in Ieppert, reached a result different from that in Spillman. Neither Kaskowitz nor Ieppert were transferred to this court. They constituted the highest applicable appellate court decisions on the subject in the St. Louis Court of Appeals district and until overruled by this court or a later decision by the St. Louis Court of Appeals represented the law on the subject in the St. Louis Court of Appeals district. Defendant company acted reasonably in relying on them rather than on Spillman.

Accordingly, we reverse and remand with directions to the trial court to enter judgment for plaintiff for the accidental death benefit provided in each of the two insurance policies sued upon, plus interest thereon, but without allowance of any penalty or attorney's fee under § 375.420.

HENLEY, C. J., MORGAN and HOLMAN, JJ., and SHANGLER, Special Judge, concur.

SEILER, J., concurs in separate concurring opinion filed.

DONNELLY, J., dissents in separate dissenting opinion filed.

STORCKMAN, J., not sitting.

SEILER, Judge (concurring).

Once the proposition is accepted that Sec. 376.620 applies to accident insurance and that suicide while insane is an accident, it must follow, as Judge Finch states, that the construction sought by the insurance company of exclusion (b) would nullify the statute if permitted, and it therefore appears to me the majority opinion reaches the correct result under the present state of the law. However, if defendant had raised the point, I would be inclined to agree with Judge Donnelly in his dissent that Logan v. Fidelity & Casualty Company, 146 Mo. 114, 47 S.W. 948 is wrong and should be overruled.

DONNELLY, Judge (dissenting).

In Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948 (1898), this Court held that the suicide statute (§ 376.620, RSMo 1959, V.A.M.S.) applies to accident policies of insurance. The courts of Missouri have struggled ever since to reach logical results within the framework of such holding. Cf. Spillman v. Kansas City Life Insurance Co., 238 Mo.App. 419, 180 S.W.2d 605, and Kaskowitz v. Aetna Life Insurance Company, Mo.App., 316 S.W.2d 132.

In my opinion, the discussion which appears in 1959 Washington University Law Quarterly, pp. 183–188, conclusively demon-

strates the illogic of the Logan holding. It reads, in part, as follows:

" * * * Furthermore, there appears to be, contrary to the conclusions of the *Logan* case, a practical reason for drawing a distinction on policy grounds between life and accident insurance for purposes of the statute. This reason lies in the basic difference between what is contemplated by the parties to a life insurance contract and what is contemplated in an accident or double indemnity policy. In the former, the insured seeks indemnification for an event which surely must happen, and his policy has the character of an investment in which only the date of payment is uncertain. The insurer, on its part, is aware that it has a certain obligation. On the other hand, in the case of accident or double indemnity insurance, the insured seeks indemnification for an event which may never happen at all, and his expectation is one of a bonus to be paid in case he dies by unnatural means. The insurer expects only to be liable upon the happening of some unexpected and unforeseeable occurrence. Conceding that there are policy reasons for protecting the beneficiary of an insured who commits suicide when covered by life insurance, where the insurer accepts the liability for the death *itself*, these reasons for protecting the beneficiary do not exist in the case of accident insurance where the insurer has agreed to assume liability only on the occurrence of an *accidental* death. In the latter instance the parties did not contemplate a payment based on the mere fact of death, but realized that death must result from a more specific, i. e., accidental cause. There is therefore no reason why the insurer should be prevented from specifying which causes of death are included in its coverage."

I would overrule the Logan case. I respectfully dissent.