MAMIE F. RIEGER, RESPONDENT, v. MUTUAL INS. COMPANY OF NEW YORK, A CORPORATION, APPELLANT.—110 S. W. (2d) 878.

St. Louis Court of Appeals. Opinion filed Dec. 7, 1937.

*Emmett Golden* and *Rene J. Lusser* for respondent.

*Jones, Hocker, Gladney & Grand* for appellant.

SUTTON, C.—This is an action on a life insurance policy. So far as pertinent here the policy is as follows:

"The Mutual Life Insurance Company of New York promises to pay, upon receipt of due proof of the death of Walter E. Rieger, the insured, two thousand dollars, (the face amount of this policy) to his wife, Mamie F. Rieger, the beneficiary, or, if there further be received due proof that such death resulted directly from bodily injury, independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent and accidental means, promises to pay to said beneficiary, instead of the face amount of this policy, four thousand dollars (double the face amount of, this policy, herein called double indemnity), provided, however, that this double indemnity shall not be payable in the event of the insured's death as a result of military or naval service in time of war nor shall it be payable in the event of the insured's death at any time by his own act, whether sane or insane, nor if such death be caused directly or indirectly, wholly or partly, by riot, insurrection or war or any act incident thereto, nor if such death be a result of participation in aeronautics or submarine operations, nor if such death resulted from any violation of law by the insured, or from police duty in any military, naval or police organization, or directly or indirectly from bodily or mental infirmity or disease of any sort.''

Upon proof of the death of the insured defendant paid the face amount of the policy, and this action is for the recovery of $2000 on the double indemnity provision of the policy.

The trial, with a jury, resulted in a verdict in favor of plaintiff for $2,113.67, including interest, as the amount due on the double indemnity provision of the policy, and for $275, as attorneys fees, for vexatious refusal to pay. Defendant appeals.

The insured died at the City Hospital in St. Louis on January 7, 1935, at the age of forty-four years. He had an accident on Monday, December 24, 1934. Plaintiff's evidence shows that prior to the accident he had always been in a good state of health, except that about six weeks prior to the accident he had an attack of bronchitis. He was five feet eleven inches tall, and weighed 175 pounds. He resided in a four-family flat on the second floor at the time of the accident, which occurred in the evening. He and his wife were descending the steps leading from the back porch. One of the steps was split in the middle. As he stepped on this split step it broke with him and threw him down. He fell backward on his sacrum and right side. The right side of his abdomen struck the step. He immediately suffered intense pain, which was continuous and grew worse from the time of the accident. He had never complained of any pain in the abdomen prior to the accident. After the accident his wife assisted him to his room and treated him with hot applications, but he continued to suffer through the night and the following day. On Wednesday, Dr. W. W. Simms was called. He administered hypodermics to ease the pain, and advised immediate hospitalization. His advice was not

heeded. On Thursday, plaintiff went to Dr. Simms' office and obtained medicine. This gave no relief. On Friday, plaintiff being unable to get in touch with Dr. Simms called in Dr. Garvin. On his advice insured was taken at once to the City Hospital, where he was treated by Dr. Sauer, a resident physician of the hospital. He was at that time a very sick man and was suffering severe pain. Concerning his condition at that time, Dr. Sauer testified: "The patient was groaning and moaning, in severe pain; complained of the most intense generalized abdominal cramps. He looked sick; had a rapid pulse, a low temperature and an elevated respiration. The abdomen was very tender to the touch generally all over the abdomen, especially the right upper quadrant of the abdomen." On Saturday, December 29th, the doctor found there had developed "a mass in the right upper aspect of the abdomen." On the following Monday, December 31st, he noticed "a progressive enlargement of this mass." On January 5th, he performed an operation and "found a tremendous clot of blood in the so-called lesser peritoneal cavity, perhaps three quarts of blood, old clotted blood." His diagnosis at that time was "hemorrhage into the ruptured peritoneal tissues." A *post mortem* was made on the body. Dr. Sauer was present and observed the *post mortem* in its performance. He testified that the *post mortem* disclosed "no evidence of gross pathology of the liver," and that the diagnosis at the time of the *post mortem* was "peritoneal hemorrhage and acute pancreatitis, and that in his opinion the fall that this man had could cause the condition I found him in, and would cause his death, that is, the hemorrhage that would ensue therefrom would cause his death." He further testified that "pancreatitis may be caused by obstruction of the common bile duct or ampulla, or it may be due to trauma." He further testified as follows: "Q. Now, if the history of this case showed a bile or gall bladder disease previous to the time of the accident, say six or eight months previous, would that have a tendency to make you think this condition was a result of disease rather than trauma? Would it be an added element? A. If we found there in the history evidence of previous inflammation of the gall bladder, that would tend to substantiate the fact, or rather, the causative factor of this pancreatitis plus hemorrhage. However, we found no evidence of gross pathology of the gall bladder."

Dr. W. W. Simms, who was a witness for plaintiff, testified that he saw the insured the next day after Christmas and found him complaining of pain in the abdomen; that he administered hypodermics and medicine and advised hospitalization. He stated that he was not equipped to make a diagnosis of the case, but stated that in his opinion "a severe blow in the region of the abdomen will cause a hemorrhage of the pancreas," and that it is possible for a man to injure the pancreas by falling on a step in a sitting position.

Dr. John J. Conner testified, on behalf of defendant, that he per-

formed an autopsy or *post mortem* on the body of the insured and found the pancreas thickened and hardened, and that the cause of that was acute pancreatitis; that he found evidence that a hemorrhage had happened a few days prior to the autopsy; that it was a peritoneal hemorrhage; that he could not exactly tell where the hemorrhage was from or what caused the hemorrhage; that he surmised that a blood vessel had bursted in some part of the body; that in his opinion a hemorrhage of the pancreas could be caused by a blow.

Dr. Louis M. Webb testified, on behalf of defendant, that he treated the insured in March, 1934, and again in the early part of November, and that his diagnosis as to what the insured was ailing with on these occasions was "subacute bronchitis and chronic gall bladder or liver trouble."

The physicians described the pancreas as a large organ that extends almost across the whole abdomen about four finger widths above the sacrum.

Dr. D. L. Harris, testifying on behalf of defendant, stated, upon hypothetical interrogation, that in his opinion acute hemorrhagic pancreatitis was the cause of insured's death, and that the acute hemorrhagic pancreatitis came on as a complication and as a result of a previous gall bladder disease. He further stated that hemorrhagic pancreatitis was usually caused by obstruction of the pancreatic duct. He explained this as follows: "There is a duct leading from the liver which is known as the bile duct. There is a duct leading from the pancreas which is known as the pancreatic duct. These meet just before they enter into the intestinal tract, to pour juices into the tract, to aid digestion. At that point where they enter the tract it is specifically named as the ampulla. Now, if that tract be obstructed in that part of the duct after the two join, the bile will then flow into the pancreas because it has no other escape. When bile in a case of an infected liver, or an infected part of the system, enters into the pancreas, acute pancreatitis results, and then hemorrhage takes place from the destruction of the blood vessels." He did not think the insured's fall could have caused the hemorrhage.

Defendant assigns error here for the refusal of its instruction in the nature of a demurrer to the evidence, insisting in support of the assignment that the evidence fails to show that the insured's death resulted directly from accidental bodily injury, independently and exclusively of all other causes, within the meaning of this provision of the policy. Defendant invokes the rule of construction, which seems to obtain in some jurisdictions, respecting policy provisions similar to this, that, if an existing disease or infirmity contributes to cause the death of the insured, in the sense that death would not have resulted but for the existing disease or infirmity, the insurer is not liable. Such rule of construction, however, does not obtain in this State. On the contrary, the maxim, *causa proxima, non remota,*

*spectatur,* is applied. [Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 73 S. W. 592; Wheeler v. Fidelity & Casualty Co., 298 Mo. 619, 251 S. W. 924; Smith v. Washington National Insurance Co. (Mo. App.), 91 S. W. (2d) 169; Driskell v. United States Health and Accident Insurance Co., 117 Mo. App. 362, 93 S. W. 880; Beckerleg v. Locomotive Engineers' Mutual Life & Accident Insurance Ass'n (Mo. App.), 274 S. W. 917; Hooper v. Standard Life & Accident Insurance Co., 166 Mo. App. 209, 148 S. W. 116.]

Defendant's counsel contend that the Fetter case, which involved a rupture of a cancerous kidney, is different from the case at bar in that there was no evidence in that case that the cancerous condition of the kidney was a contributory cause of death. Counsel apparently overlook the testimony of Dr. Hall in that case, which was stressed by the court as follows:

"Dr. Hall, a scientific witness for defendant, who examined the kidney after it had been taken from the body, after death, was of the opinion that the cancer existed before the accident, *and that the rupture occurred only in the diseased part of the kidney.* He said: 'The exciting cause of the hemorrhage was the injury and the predisposing cause was the cancer. Q. What do you mean by the predisposing cause? A. That was the condition of the kidney *which gave rise to the production of the fracture.* The predisposing cause is the remote cause. *The cancerous condition weakened the kidney to such an extent that it responded to this injury by some accidental means.*' " (Italics ours.)

Can there be any question that this testimony shows that the cancerous condition of the kidney was a contributory cause of death?

Defendant also relies on the provision of the policy that double indemnity shall not be payable if the death of the insured result "directly or indirectly from bodily or mental infirmity or disease of any sort." This provision evidently has reference to the cause of the accident, not to its effect. This is shown by its intimate association with other provisions such as that double indemnity shall not be payable in the event the insured's death shall result from military or naval service in time of war, or by his own act, or from riot, insurrection, or war, or from participation in aeronautics or submarine operations, or from any violation of law by the insured, or from police duty in any military, naval or police organization. This is apparently the construction placed upon a similar policy provison in Carr v. Pacific Mutual Life Insurance Co., 100 Mo. App. 602, 75 S. W. 180, a case relied on by defendant here.

There is no evidence in this case, nor contention, that the insured's fall resulted directly or indirectly from bodily or mental infirmity or disease of any sort. It will be time enough when such a case arises to determine the effect of this provision in its application thereto.

Defendant further contends that the evidence is insufficient in that

it shows nothing more than a possibility that the accident caused the hemorrhage which resulted in the insured's death. We can see no substantial merit in this contention. It may be that the testimony of the physicians went no further than to show that the accident could have caused the hemorrhage, but in addition to this the testimony for plaintiff shows that the insured prior to the accident was in an apparent state of good health, and had not suffered any pain in the abdominal region, and that immediately following the accident he began to suffer severe pain in that region which continued and grew worse down to the time of his death, and that twelve days after the accident an operation revealed a "tremendous clot of blood—old clotted blood—in the so-called lesser peritoneal cavity." The evidence shows no hemorrhage prior to the accident. In this connection, see: MacDonald v. Metropolitan Street R. Co., 219 Mo. 468, l. c. 481, 118 S. W. 78, l. c. 82; Sharp v. Missouri Pacific R. Co., 213 Mo. 517, 111 S. W. 1154; Schulz v. St. Louis-San Francisco Ry. Co. (Mo.), 4 S. W. (2d) 762, l. c. 767; Kimmie v. Terminal R. Ass'n (Mo.), 66 S. W. (2d) 561; Meyers v. Wells (Mo.), 273 S. W. 110, l. c. 116; Derschow v. St. Louis Public Service Co. (Mo.), 95 S. W. (2d) 1173, l. c. 1175; Mueller v. St. Louis Public Service Co. (Mo. App.), 44 S. W. (2d) 875; Lunsford v. St. John's Hospital (Mo. App.), 107 S. W. (2d) 163; Klohr v. Edwards (Mo. App.), 94 S. W. (2d) 99, l. c. 105; McPherson v. Premier Service Co. (Mo. App.), 38 S. W. (2d) 277.

As said in the Smith case, supra, the evidence in this case reasonably warrants the finding that the accident suffered by the insured "was the direct, proximate, and efficient cause of insured's death, and that the diseased condition of his body was a remote and not the direct or proximate cause of his death."

Plaintiff's Instruction No. 2, complained of by defendant, is a substantial replica of Instruction No. 2 given and approved in the Fetter case. It would serve no useful purpose to set out or discuss the instruction here.

Defendant urges that the court committed error in submitting to the jury the question of vexatious refusal to pay the double indemnity provided for in the policy. It has been repeatedly held by the courts of this state that where there is an open question of law or an issue of fact determinative of the insurer's liability, the insurer, acting in good faith, may insist upon a judicial determination of such question or issue without being penalized therefor. [Cooper v. National Life Ins. Co. (Mo. App.), 253 S. W. 465; Campbell v. National Fire Ins. Co. (Mo. App.), 269 S. W. 645; State ex rel. Continental Life Ins. Co. v. Allen (Mo.), 262 S. W. 43, l. c. 46; Rush v. Metropolitan Life Ins. Co. (Mo. App.), 63 S. W. (2d) 453, l. c. 465; St. Clair v. Washington Fidelity Nat. Ins. Co. (Mo. App.), 89 S. W. (2d) 85.] In this case the record discloses no evidence of bad faith on the part

of defendant. It follows that the court erred in submitting the question of vexatious refusal to pay.

The Commissioner recommends that the judgment of the circuit court be reversed and that the cause be remanded to said court with directions to enter a new judgment in favor of plaintiff against the defendant for $2,000, with interest thereon at the rate of six per cent per annum from January 7, 1935, to the date of the new judgment.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded to said court with directions as recommended by the Commissioner. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.

## ON MOTION FOR REHEARING.

SUTTON, C.—Defendant's learned counsel, with much apparent sincerity and earnestness, urge that our construction of the provision of the policy that double indemnity shall not be payable if the death of the insured result directly or indirectly from bodily or mental infirmity or disease of any sort is not justified by its language. Counsel concede that such a construction would be entirely justified if there was any ambiguity in the language.

In view of this we will examine the provision further. The language employed is that double indemnity shall not be payable "if death *result* directly or indirectly from bodily or mental infirmity or disease of any sort." Counsel construe this to mean that double indemnity is not payable if death is caused or *contributed* to, directly or indirectly, or wholly or *partially,* from bodily or mental infirmity or disease. In other words, they construe it to mean that, though the insured's death resulted directly from external, violent, and accidental means, the insurer is not liable for double indemnity if such death was contributed to indirectly, or partially, by disease, or if the accident would not have caused death except for disease. The policy is not so written, and we are not permitted to rewrite it.

In this connection we have in mind the familiar rule that provisions in insurance policies designed to down, restrict, or limit, the insurance already granted, or instroducing exceptions or exemptions, must be strictly construed against the insurer.

With respect to the complaint of learned counsel that we have not fairly set out the evidence pertinent to the ruling on the instruction in the nature of a demurrer to the evidence, it will suffice to say that it is not regarded as either necessary or proper to burden the opinion

with a statement of the evidence in the light most favorable to the defendant. It is our duty to state the evidence in the light most favorable to the plaintiff, and this we have done.

The Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Appellant's motion for rehearing is accordingly overruled. Hostetter, P. J., and Becker and McCullen, JJ., concur.