NORA SPILLMAN, RESPONDENT, v. KANSAS CITY LIFE INSURANCE COMPANY, APPELLANT.—180 S. W. (2d) 605.

Kansas City Court of Appeals.   April 3, 1944.

*Ray B. Lucas* and *Jos. R. Stewart* for appellant.

*Dwight Roberts* and *Earl J. Boughan* for respondent.

SPERRY, C.—Nora Spillman, plaintiff, widow of Carl Spillman, deceased, sued Kansas City Life Insurance Company, defendant, for benefits claimed to be due her under the ''double indemnity'' clauses of two life insurance policies issued by defendant on the life of deceased. Trial to a jury resulted in a verdict and judgment for plaintiff. Defendant appeals.

Defendant issued two life insurance policies to Carl Spillman and plaintiff was the named beneficiary in each of said policies. Said policies were in full force and effect December 26, 1941, when insured died as the result of a gunshot wound, self-inflicted. Each of said policies provided for payment of a death benefit of $1000, and for double that amount if insured's death was accidental as therein limited. Plaintiff executed and delivered to defendant December 30, 1941, proofs of death, wherein it is recited that the cause of death was ''self inflicted'' by deceased's own hands. Defendant promptly paid to plaintiff the sum of $2000 and took her release and receipt, and she surrendered said policies to defendant, furnished no further written proofs of death, and made no further written demand for payment of benefits.

There was substantial evidence tending to prove that insured was insane at the time he took his life by shooting himself and that, prior to institution of this suit, plaintiff's attorney visited the office of defendant, examined the policies sued on, and made demand for payment of the double indemnity benefits provided therein for accidental death which defendant refused to pay.

The rider upon which this lawsuit must be decided, reads as follows:

''If the death of the Insured shall result, independently and exclusively of all other causes, solely from bodily injury, effected directly

by external, violent and accidental means, . . . and if claim be made therefor and satisfactory proof thereof submitted to the Company at its Home Office before surrender of this Policy, the Company will pay, . . . the sum of Two Thousand Dollars, . . . provided, that there shall be no liability hereunder for death resulting from self-destruction, while sane or insane, . . . or directly or indirectly, wholly or in part, from poisoning, infection or any kind of illness, disease or infirmity, . . ."

Defendant first contends that its offered demurrer to the evidence should have been sustained because "insured's death resulted, directly or indirectly, wholly or in part, from illness, disease or infirmity; a cause of death which was expressly excluded from the coverage of the double indemnity riders in each policy."

There was medical testimony tending to prove that insanity is a mental illness or disease. It is argued that insured would not have taken his life but for the disease from which he suffered and that, therefore, insured's death was, indirectly at least, due to illness. Defendant concedes that suicide is no defense because of the provisions of Section 5851, Revised Statutes Missouri, 1939.

In determining whether or not the cause of death was accidental the law will not go further back in the line of causation than to find the active, efficient, procuring cause. The maxim, cause proxima non remote spectatur, will be applied. [Fetter v. Fidelity & Casualty Company, 174 Mo. 256, 1. c. 268, 73 S. W. 592, 1. c. 593, 61 L. R. A. 459, 97 Am. St. Rep. 560.]

In the case of State ex rel. Prudential Insurance Company of America v. Shain et al., 344 Mo. 623, 127 S. W. (2d) 675, 1. c. 678, insured had accidently consumed water impregnated with typhoid germs. Typhoid fever followed and insured died. In holding that the death was not accidental the court said: "Common understanding would force the conclusion that typhoid fever, the *disease,* was the proximate, procuring cause of death." (Italics ours.) In the case of Roberts v. Woodmen Acc. Co., 129 S. W. (2d) 1053, the policy provided that insurer ". . . shall not be liable for . . . death resulting, wholly or partially, directly or indirectly from . . . disease, . . ." We, in effect, applied the above rule and held that insured's death was accidental although he had a diseased and enlarged spleen (from which he eventually would have died) but for which the injury received when he accidentally fell would not have caused death. We held that the proximate cause of death was the accidental injury and not the disease.

Defendant cites and relies on Fields v. Pyramid Life Insurance Company, 169 S. W. (2d) 111, decided by this court. The suit was to recover for accidental death and the policy excluded liability for death by self destruction while sane or insane, or by poisoning. Insured died from poisoning, self administered while insane. We held

that the clause excluding liability for death by self destruction was wholly inoperative by reason of the statute but that it did not broaden the coverage provided in the policy; and that, since death by poisoning was not covered, there was no liability.

An insurance company may exclude from coverage death caused by any particular accident unless prohibited from so doing by statute. [Aufrichtig v. Columbia National Life Insurance Company, 298 Mo. 2, 1. c. 10; Fields v. Pyramid Life Insurance Company (Mo.), 176 S. W. (2d) 281.] In the policy here under consideration liability for death caused by accidental shooting is not excluded. The jury could properly find from the evidence that the death was accidental; and the policies covered an accidental death resulting from a gunshot wound.

If this court were to uphold defendant's contention, as here made, we must entirely disregard the provisions of Section 5891, Revised Statutes Missouri 1939 (the suicide statute). This we cannot do. But for the statute it would be impossible for any beneficiary to recover on any accident policy containing general provisions excepting liability because of illness direct or indirect, and a provision against liability if death should result from suicide (as these policies provide) because if insured were sane then death would not be the result of an accident; and if insane the death would be due, indirectly, to disease. [Mandles v. Guardian Life Insurance Company of America, 32 Fed. Supp. 619, 1. c. 621.] In Missouri, exclusion clauses based on suicide are rendered void. They cannot be made valid by court decision founded on specious reasoning.

Defendant next contends that its demurrer to the evidence should have been sustained because no proofs of loss were furnished. In support of this contention it cites 29 Am. Jur. 824, 825. However, the above authority also states: ". . . but unless it is made a condition precedent or a forfeiture is provided for, the failure to give notice or furnish proofs, . . . will not defeat recovery, . . ." and "If a policy provides for such proofs as are required by the insurer, there is no duty to furnish proofs until required." The provision regarding proofs upon which defendant must rely is as follows: ". . . and if claim be made therefor and satisfactory proof thereof submitted to the company, . . . before the surrender of this policy." Such a stipulation does not forfeit the insurance for failure to make proof. [Schell v. Met. Life Ins. Co., 3 S. W. (2d) 269, 1. c. 271; Jackson v. Security Ben. Ass'n., 139 S. W. (2d) 1014, 1. c. 1018, 1019.]

Proofs of death were submitted, on forms provided by defendant, within a week after insured died. They were apparently sufficient to satisfy defendant because it demanded no further proofs or information and it paid the life benefits; but it said or did nothing whatever about the double indemnity benefits. It made no complaint, until now, of failure to submit proper proofs of loss, nor did it ever request

any additional proofs or information. The proofs submitted furnished defendant with sufficient facts from which it could have ascertained its liability, and if it required further information it should have requested same. [Schell v. Metropolitan Life Insurance Company, *supra.*] In view of the policy provision covering proofs, and the conduct of defendant relative to the matter, we think there was substantial evidence that the proofs as furnished were sufficient.

The verdict and judgment was for $1075 for damages, and for $350 for attorney fees on each policy for vexatious refusal to pay. Defendant contends that this issue should not have been submitted.

Plaintiff produced the testimony of herself and four lay witnesses, together with the testimony of a medical witness, on the question of insanity. This evidence tended strongly to establish insanity as a fact. As opposed to this testimony defendant produced the statement, in the form of an affidavit, of insured's attending physician, which affidavit was received in evidence by agreement of parties, and which affidavit tended to prove that insured was sane when he took his life. It appears, therefore, that there was in the case and in existence, substantial and conflicting evidence on the question of insured's mental condition. Where there is an open question of fact determinative of the insured's liability, the insurer, acting in good faith, may insist upon a judicial determination of such issue without being penalized therefor. [Rieger v. Mutual Life Insurance Company of New York, 234 Mo. App. 93, 110 S. W. (2d) 878, l. c. 882.] "An insurance company's right to resist payment upon one of its policies cannot be determined by the facts as found by the jury, but must be determined by the facts as they reasonably appeared to it before the trial. It has the right to refuse payment . . . so long as it had reasonable ground to believe its defense is meritorious.". [State ex rel. John Hancock Mutual Life Insurance Company v. Hughes et al., 152 S. W. (2d) 132, l. c. 135.]

Plaintiff herself did not state the fact of insanity in her proof of death and insured's own physician, who had treated him for some months prior to his death and who attended upon the occasion of his death, did not believe him to be insane. Under such a state of facts we think the issue of vexatious refusal to pay should not have been submitted.

If plaintiff will remit $700 within ten days the judgment should be affirmed; otherwise the judgment should be reversed and the cause remanded. *Boyer, C.,* not sitting.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. If plaintiff will remit $700 within ten days the judgment should be affirmed; otherwise the judgment should be reversed and the cause remanded. *Bland* and *Cave, JJ.,* concur.