Jean WHITED, respondent,

v.

NATIONAL WESTERN LIFE INSUR-
ANCE COMPANY, a Foreign
Corporation, Appellant.

Jean WHITED, Appellant,

v.

NATIONAL WESTERN LIFE INSUR-
ANCE COMPANY, a Foreign
Corporation, Respondent.

Nos. KCD 27123, KCD 27118.

Missouri Court of Appeals,
Kansas City District.

Aug. 4, 1975.

Michael J. Albano, Graham, Paden, Welch, Martin & Tittle, Independence, for Jean Whited.

Richard A. King, Independence, for National Western Life Ins. Co.; Constance, Slayton, Stewart & King, Independence, of counsel.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ANDREW J. HIGGINS, Special Judge.

Appeal (No. 27123) by National Western Life Insurance Company from that part of summary judgment which favored Jean Whited and required National to pay $10,000 life insurance policy proceeds plus six per cent interest to Mrs. Whited as beneficiary of a life insurance policy, consolidated with appeal (No. 27118) by Jean Whited from that part of summary judgment which favored National Western Life Insurance Company and denied Mrs. Whited's claim of vexatious refusal to pay.

On November 4, 1968, Gary R. Jackson, a resident of Missouri at 9616 East 33rd Street, Independence, Missouri, while a member of the United States Army stationed at Ft. Rucker, Alabama, applied by written application to Missouri Fidelity Union Trust Life Insurance Company for a $10,000 policy of life insurance, and designated his mother Jean Jackson (Whited), first beneficiary. The policy application was solicited by the company's agent in Alabama. Missouri Fidelity subsequently merged with National Western Life Insurance Company; and both companies were, at all times, licensed to do business in Missouri as foreign insurance companies.

The application contained the following provision: "[U]nless the first premium is paid in cash with this application there shall be no insurance contract until a policy has been delivered to me [the insured] during the good health and while the habits and occupation of the proposed insured remain as described in this application, and the first premium paid."

At the time of execution of the application, Gary R. Jackson also executed a "Class E" military pay allotment directing the service finance officer to deduct from his December pay the sums necessary to satisfy the initial and subsequent premiums on the policy as they became due and forward them to the insurance company. Such an allotment may be canceled at will by the serviceman; no other form of payment was made.

The application instructed that the policy be mailed to the beneficiary, Mrs. Jean Jackson, 9616 East 33rd Street, Independence, Missouri. The policy was issued January 1, 1969, and mailed to the Independence address.

The policy contained the following provision: "If the insured shall commit suicide while sane or insane within two years from the date of issue of this policy, the liability of the Company shall be limited to the amount of premiums actually paid hereunder."

It also provided: "Any provision of this policy which is, on the date of issue, in conflict with the statutes of the State in which the policy is issued or delivered is hereby amended to conform to such statutes."

Section 376.620, RSMo 1969, V.A.M.S., provides: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it

shall be shown \* \* \* that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

■ Suicide exclusions are recognized by the substantive law of Alabama. See *Kiley v. Pacific Mut. Life Ins. Co.*, 237 Ala. 253, 186 So. 559 (1939); 1 Appleman, Insurance Law and Practice, § 362 (1965).

Gary R. Jackson died September 8, 1969, of a bayonet wound in the chest while on active military duty in Vietnam. His mother made claim for the proceeds of the policy of insurance and, upon the company's refusal to pay, instituted this action for recovery of the proceeds of the policy and damages for vexatious delay. Defendant took the position that the death was the result of suicide, submitted an affidavit that the stab wound was self-inflicted in support of that position, and contended that the policy was made in Alabama where the suicide exclusion is recognized.[1] Plaintiff took the position that the cause of death was immaterial because the contract was made in Missouri where suicide exclusions are void.

Upon completion of the pleadings, plaintiff moved for judgment on the pleadings which the trial court considered as a motion for summary judgment under Rules 55.-27(b) and 74.04, V.A.M.R. Among other things, the court found that the military allotment form of payment did not meet the contract requirement of cash necessary to complete the contract in Alabama, and ruled that the policy was a Missouri insurance contract to which the suicide exclusion would not apply; and found that defendant was reasonably entitled to insist upon judicial determination of the policy terms in question, and ruled that defendant was not to be held for vexatious delay.

■ A summary judgment may be entered when the party seeking it shows by unassailable proof that he is entitled to judgment as a matter of law and that the other party would not be entitled to recover under any discernible circumstances. *Brummet v. Livingston*, 384 S.W.2d 101, 103[1] (Mo.App.1965); *Wright v. Wrehe*, 415 S.W.2d 781, 783 (Mo.1967). See also *Anderson v. Steurer*, 391 S.W.2d 839 (Mo.1965); *E. O. Dorsch Electric Co. v. Plaza Construction Co.*, 413 S.W.2d 167 (Mo.1967).

Appellant National Western Life Insurance Company contends that plaintiff was not entitled to that part of the summary judgment in her favor, asserting that the record indicates circumstances under which National would be entitled to prevail. National's position is that if Alabama substantive law is applied the suicide exclusion in the policy is a valid defense. See *Kiley v. Pacific Mut. Life Ins. Co.*, supra. In order to bring itself within this position, National argues that the events which took place in Alabama were sufficient to complete the contract of insurance there and make Alabama law applicable in that Missouri will apply the law of the state where a contract is made in interpreting its provisions. See, e. g., *Kellogg v. National Protective Ins. Co.*, 236 Mo.App. 837, 155 S.W.2d 512 (1941); *Pickett v. Equitable Life Assur. Soc.*, 27 S.W.2d 452 (Mo.App.1930); *Auffenberg Lincoln-Mercury v. Wallace*, 318 S.W.2d 528 (Mo.App.1958); *American Institute of Marketing Sys., Inc. v. Brooks*, 469 S.W.2d 932 (Mo.App.1971); *Grider v. Twin City Fire Ins. Co.*, 426 S.W.2d 698 (Mo.App.1968); *Fields v. Equitable Life Assur. Soc.*, 118 S.W.2d 521, 524 (Mo.App.1938).

Appellant National refers to the provision in the policy application that there would be no insurance contract until the policy was delivered "unless the first premium is paid in cash with this application," to further state its position: "If the first premium can be construed to have been paid in cash with the application the last act necessary to bind the parties to a contract took place in

---

1. Defendant does not contend that the insured contemplated suicide at the time he applied for the policy.

Alabama and the law of that state should apply—allowing defendant to prevail." In support, appellant contends it was entitled to present extrinsic evidence of the meaning of "cash" in the application and the significance of the execution of a military pay allotment in order to show that the contract of insurance was consummated in Alabama.

As recognized by appellant National, resolution of this litigation turns on the meaning of "cash" or "cash with this application" as used in the insured's application for the life insurance policy in question. Thus, the dispositive question is whether execution of a military pay allotment satisfied the requirement of the policy application for payment, i. e., "payment of the first premium in cash with this application."

The trial court ruled that execution of the military pay allotment "amounts to nothing more than an agreement to pay through an intermediary at a future date," subject to election of the insured to continue the order in force, "and does not meet the contract requirement of cash necessary to bind the defendant to the insurance obligation when the application was taken. * * * accordingly, * * * subject insurance contract became effective, according to its terms, upon delivery of the policy to plaintiff in Missouri. It is therefor[e] a Missouri contract to be enforced and interpreted according to the laws of this state. * * * Suicide exclusion clauses being prohibited by statute in this state and such * * * being the only defense to payment of the policy death benefit, plaintiff is entitled to recover."

This determination, as attacked by appellant National, should be affirmed, if, as a matter of law, and without need to resort to extrinsic evidence, execution of a military pay allotment is not the equivalent of "cash" or "cash with this application" as required by the policy application for its completion.

■ As in the trial court, the problem presented is the meaning of certain words as used in the insurance contract, specifically in the policy application. Any doubt of their meaning raised an issue of law resolvable on motion for judgment on the pleadings. *Gehner v. Equitable Life Assurance Society of U. S.*, 430 S.W.2d 621, 623[1] (Mo.App.1968).

■ Meaning of words or terms in an insurance contract is tested by common understanding and speech of men. If there is a conflict between a technical definition and the meaning normally understood by the average layman, the layman's definition will be applied unless the technical meaning is intended. *Greer v. Zurich Insurance Co.*, 441 S.W.2d 15, 27[12] (Mo.1969).

■ "Cash" is an unambiguous word commonly and normally understood by laymen due to its universal usage in business, commercial and financial transactions. Webster's New International Dictionary, 2d Edition, accords "cash" primary meanings, viz., "Money, esp. ready money; strictly, coin or specie, but also, less strictly, bank notes, sight drafts or demand deposits at a bank. * * * Money or its equivalent paid immediately or promptly after purchasing; as, to sell goods or to give a discount for cash." In accord is the definition of "cash" in Black's Law Dictionary, Revised Fourth Edition, viz: "Money or its equivalent; usually ready money." "With reference to the terms or time of payment, 'cash' has been defined as meaning immediate payment; money paid down; money or its equivalent paid immediately or promptly after purchasing." 14 C.J.S. Cash, p. 16.

Case law also recognizes the foregoing commonly understood and employed meanings of "cash." *Lee v. State Department of Public Health and Welfare*, 480 S.W.2d 305, 309 (Mo.App.1972), defined "cash" as money or currency issued by lawful authority intended to pass and circulate as such. See also *State v. Darby*, 165 S.W.2d 419, 420 (Mo.1942); *Neufield v. United States*, 118 F.2d 375, 387 (D.C.App.1941). Finally, and with direct reference to the insurance busi-

ness, *In re Palliser,* 136 U.S. 257, 263, 10 S.Ct. 1034, 1035, 34 L.Ed. 514 (1890), recognized " 'cash' * * * as in common speech" to mean "ready money, or money in hand, either in current coin or other legal tender, or in bank-bills or checks paid and received as money, and does not include promises to pay money in the future. A sale on credit is not, ordinarily speaking, and in the absence of any evidence of usage, a sale for cash, within the meaning of that word as used in statutes or contracts. * * * 'Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies.' *Hoffman v. Hancock Ins. Co.,* 92 U.S. 161, 164 [23 L.Ed. 539]. * * * the only point decided in that case was that an agent of an insurance company could not, unless authorized by the company, accept personal property as money in payment of a premium; no question arose or was considered as to the premium note; and it cannot reasonably be inferred that the learned justice meant to intimate that a premium note was cash or money, before the amount thereof was paid by the insured and received by the insurance company, according to the terms of their contracts." Direct in point is *Newsom v. New York Life Ins. Co.,* 60 F.2d 241, 243 (6th Cir. 1932), where execution by applicant for life insurance policy of note to local agent for first premium was not payment "in cash" so as to render policy effective from date of application, which application provided that "if the applicant * * * pays the agent in cash the * * * first premium * * then said insurance shall take effect and be in force * * * from and after the time this application is made * * *." The use of "in cash" in the application in order to complete the policy and put the insurance in force "indicates an intent to require the payment to be made within the restrictions that are ordinarily imported by that term." Just as the note in the foregoing case was but a promise to pay the initial premium in the future and was not a pay-

ment "in cash," the military pay allotment executed by Gary R. Jackson was but a promise, revocable at will, to have his finance officer pay the initial premium in the future and was not a payment by "cash" or "cash with this application."

There is also a similarity in meaning of "cash with this application," as used in the policy, and the familiar terms and usages from the past of "cash on the nail" and "cash on the barrelhead," noted in connection with Webster's definition of "cash" in Webster's Third New International Dictionary.

In support of its contention that the court should have taken extrinsic evidence on the meaning of "cash," appellant National cites *E. O. Dorsch Electric Co. v. Plaza Construction Co.,* supra; *Cure v. City of Jefferson,* 380 S.W.2d 305 (Mo.1964); *National Merchandising Corporation v. McAlpin,* 440 S.W.2d 489 (Mo.App.1969); and *Clark-Lami, Inc. v. Cord,* 440 S.W.2d 737 (Mo.1969). These cases deal with terms unique to problems in electrical contracting and rock excavation, and with jurisdiction and meaning of "good will" in a merger agreement. They are not in point on the meaning of "cash," the commonly understood meaning and usage of which is demonstrated by the authorities previously cited.

Accordingly, the trial court properly determined as a matter of law that the military pay allotment executed by Gary R. Jackson did not satisfy the contract requirement of payment of the initial premium by "cash" necessary to complete and effectuate the contract in Alabama prior to its subsequent delivery to the insured in Missouri. Missouri law thus applies to this contract, and defendant's defense of suicide as provided in the policy was properly disallowed. Section 376.620, supra.

With the appeal of National in this posture, it is not necessary to discuss its remaining point with respect to the "conformity clause" quoted from the policy in the statement of fact. Nor is it necessary to discuss respondent's theory of recovery un-

der the "principle contacts" doctrine. See Restatement, Conflict of Laws 2d § 188, p. 575.

Appellant Whited contends the court erred in an abuse of discretion in overruling plaintiff's motion to submit to a jury penalties and damages for vexatious refusal to pay. Her argument is that the question of an award for vexatious delay and an allowance for attorney fees was for the jury because the evidence showed that defendant's refusal to pay the policy proceeds was based solely upon the defense of suicide which had been previously nullified by Section 376.620, supra. Appellant concedes that recovery and the amount of damages for vexatious delay in making payment under an insurance policy are matters discretionary with the trial court. *Noble v. Missouri Ins. Co.*, 204 S.W.2d 446, 450[11] (Mo. App.1947); *Howard v. Aetna Life Ins. Co.*, 350 Mo. 17, 164 S.W.2d 360, 366 (1942).

The trial court, in refusing penalties and damages for vexatious delay, found that the evidence did not show that defendant's refusal to pay was arbitrary or unreasonable but that it was reasonable for defendant to seek a judicial determination of the meaning of the terms in the policy in question.

Where reasonable questions of law or fact exist between parties to an insurance contract, the insurance company, as well as any other party, is entitled to an adjudication of such questions without penalty. *Duckworth v. United States Fidelity & Guaranty Co.*, 452 S.W.2d 280, 287[10–12] (Mo.App.1970); *Sommer v. Metropolitan Life Insurance Co.*, 449 S.W.2d 644 (Mo. banc 1970).

In this case, the questions presented, the briefs of the parties, and this opinion demonstrate a genuine dispute in which it was reasonable for the defendant to seek an adjudication. Accordingly, defendant should not be held to penalties for vexatious delay.

Judgment affirmed.

All concur.