Nancy E. MORRIS, Appellant,

v.

J.C. PENNEY LIFE INS. CO., Respondent.

WD 49210.

Missouri Court of Appeals, Western District.

Jan. 17, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1995.

Application to Transfer Denied April 25, 1995.

Ted F. Fay, Jr., Merriam, KS, for appellant.

Robert W. McKinley, Jr., Kansas City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

PER CURIAM:

This case involves an appeal from a trial court order directing a verdict for defendant on a claim of vexatious refusal to pay an

insurance claim. Nancy E. Morris, plaintiff, appeals from the judgment entered in favor of J.C. Penney Life Insurance Company, defendant, on the vexatious claim.

On April 25, 1991, Nancy Morris received a telephone call directed to her husband, Frank Morris, from a telephone solicitor for J.C. Penney Life Insurance Company ("Penney"). Mr. Morris was the holder of a credit card account with the J.C. Penney Company, which operates retail stores. The caller was attempting to sell accidental death and dismemberment coverage for Mr. Morris in the amount of $40,000.00. Mr. Morris was not home at the time of the call, but the caller continued the sales presentation with Mrs. Morris. The solicitor told Mrs. Morris that the offer was being made to holders of J.C. Penney credit cards, and that J.C. Penney would pay the first 90 days of coverage for Mr. Morris and that he could cancel the policy at any time. The premiums for coverage after the first ninety days would be billed monthly on the J.C. Penney credit account. Mrs. Morris eventually agreed to accept coverage. A few hours after the phone conversation, Mr. Morris died when the plane he was piloting crashed.

On May 8, 1991, the Morrises' son contacted Penney concerning the death of Mr. Morris. Penney informed him that there was no coverage because a written policy was not issued until April 28, 1991, three days after the date of the death, but agreed to process the claim forms.

Eventually, Penney admitted coverage became effective at the oral acceptance of the coverage by Mrs. Morris. However, the company continued to deny coverage on the ground that the policy included a "pilot's exclusion."[1] There is no evidence that policy exclusions were ever discussed with Mrs. Morris. The phone script which Penney alleges was used during the solicitation does not mention any exclusions. Mrs. Morris stated that exclusions were not discussed during the conversation. She further stated that had a pilot's exclusion been mentioned, she would not have agreed to the coverage since her husband had been a pilot for many years. Penney concedes that there is no evidence that exclusions were mentioned to Mrs. Morris, but contends that a promotional mailer sent to Mr. Morris in March of 1991 contained a description of the exclusions, including the pilot's exclusion.[2] Penney argued to the trial court that the exclusions were constructively incorporated into the coverages even though not specifically mentioned to Mrs. Morris because they were standard exclusions for this type of policy.

Plaintiff filed her petition on January 3, 1992. The trial court denied a motion for summary judgment filed by defendant and a motion for partial summary judgment filed by plaintiff. On May 27, 1993, the court reconsidered the motions and again denied both of them. Plaintiff and defendant agreed to try the claims of plaintiff on a stipulation of facts. Plaintiff chose to submit the coverage issue to the trial court. Plaintiff desired, however, to submit the claim of vexatious refusal to a jury. There is no indication that plaintiff intended to present any evidence beyond the stipulated facts[3] on the issue of vexatious refusal. Upon consideration of the

1. The wording of the exclusion provision is as follows:

    A. No benefits will be paid for loss caused by or resulting from: intentionally self-inflicted injury while sane or insane; a war or act of war, whether declared or not; any injury while the Covered Person is taking part in a speed contest; the use or taking of any narcotic, barbiturate or any other drug by the Covered Person unless taken or used as prescribed by a physician; an injury occurring while the Covered Person is intoxicated; or any injury while the Covered Person is acting as a pilot/crew member in an aircraft.

2. The individual solicitor who spoke to Mrs. Morris on the telephone was no longer employed by Penney at the time of trial. Plaintiff had sought to depose the solicitor but was unable to locate him.

3. Although it might seem unusual to present a case to the jury on stipulated facts only, the record contains no hint that plaintiff had any intention of presenting any testimony, or any of the depositions of the Penney employees, on the issue of vexatious refusal. If appellant had intended to present additional substantive evidence beyond the stipulation, it would, of course, have been error for the trial court not to consider such evidence before ruling on the submissibility of the claim.

stipulation, the trial court ruled on the coverage issue that plaintiff was entitled to recover the death benefit under the policy, plus interest. The court, as to the claim of vexatious refusal, granted defendant a directed verdict. Defendant appealed the judgment on coverage issue, and then dismissed its appeal. Plaintiff appeals the grant of directed verdict to defendant on the vexatious refusal claim.

■　Plaintiff Morris raises one issue on appeal. She claims that the trial court erred in ruling that the question of vexatious refusal under § 375.420, RSMo 1986 was not properly an issue for a jury. When reviewing the grant of a directed verdict, this court reviews the record in the light most favorable to the party against whom judgment was entered. *Burke v. Kehr,* 876 S.W.2d 718, 721 (Mo.App. 1994).

■　Section 375.420 provides that if the evidence indicates that an insurer has refused to pay a claim without reasonable cause or excuse, the court may award damages not greater than 20% of the first $1,500.00 of the loss and 10% of the loss in excess of $1,500.00 together with reasonable attorney's fees, in addition to the amount of recovery owing under the policy. To prove a claim of vexatious refusal, the insured must show the insurer's refusal to pay the claim was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *Oliver v. Cameron Mut. Ins. Co.,* 866 S.W.2d 865, 870 (Mo.App.1993). The trial judge first determines whether the case involves a reasonably litigable issue. If the judge decides that it does involve a reasonably litigable issue, that decision does not necessarily end the inquiry. The existence of a litigable issue does not preclude a vexatious penalty where there is evidence that the insurer's attitude was vexatious and recalcitrant in refusing the claim. *Russell v. Farmers & Merchants Ins. Co.,* 834 S.W.2d 209, 221 (Mo.App.1992). The insured is not required to show direct and specific evidence to show vexatious refusal. *Id.* The jury may find vexatious refusal upon a general

survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case. *Id.*

■　The fact that the trial judgment is adverse to the insurer's contention is not sufficient reason to impose the statutory penalty. *Id.* The test is not the final determination of the issues, but rather, how the facts appeared at the time of the refusal to pay. *Katz Drug Co. v. Commercial Standard Ins. Co.,* 647 S.W.2d 831, 839 (Mo.App.1983). If there is an open question of fact or law determinative of the insurer's liability, the insurer, acting in good faith, may insist upon a judicial determination of such questions without being penalized. *Kay v. Metropolitan Life Ins. Co.,* 548 S.W.2d 629, 632 (Mo. App.1977). Only when the insurance company persists in its refusal to pay after becoming aware that it has no meritorious defense does the insurer become liable for vexatious delay. *Id.* The purpose of § 375.420 is to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the claim. *See Bouligny v. Metropolitan Life Ins. Co.,* 179 S.W.2d 109, 112 (Mo.App.1944).

■　An insurer's stated grounds for denying a claim must involve a reasonably litigable issue. *Russell,* 834 S.W.2d at 221 (citing *Berry v. Federal Kemper Ins. Co.,* 621 S.W.2d 948, 954 (Mo.App.1981) (where the court examined the evidence of the insurer's reason for denying coverage and described the reason as "tenuous at best.")). Here, the trial judge found the issue to be reasonably litigable. The trial court viewed the issue as one of first impression. Indeed, we find no previous rulings in Missouri on the issue of whether a telephone solicitation sale of life insurance coverage carries with it the effect of reasonable exclusions which are not detailed in the solicitation. Moreover, we cannot say, as a matter of law, that it was not reasonably litigable for Penney to take the position that coverage did not attach until the policy was issued, which was three days after the telephone solicitation.[4] Giving reason-

---

4. The record provides us no information as to the point at which the charge for premiums attached. Therefore, we assume that the premium charge (to be paid by J.C. Penney Company for the first 90 days) commenced not on the date of

able deference to the trial judge's determination of this matter, we hold the trial court's determination that the issues raised by Penney were reasonably litigable was not erroneous. Since this determination does not necessarily end the inquiry, we next examine whether there was other evidence that the insurer's attitude was vexatious and recalcitrant in handling the claim, thereby causing an unreasonable delay in plaintiff's pursuit of a recovery.

■ The evidence plaintiff submitted on the issue of vexatious refusal to pay was included in the stipulation. The following item was included in the stipulation:

The tape containing the recordings of telephone conversations of April 25, 1991, including the conversation between Mrs. Morris and the phone solicitor was reused, and the conversation with Mrs. Morris destroyed by J.C. Penney Life approximately 4 to 6 months after the phone call, and some 3 to 5 months after the claim in this case was submitted.

Plaintiff argues that the erasure of the recording of the telephone conversation between Mrs. Morris and J.C. Penney Life is evidence of an attitude of vexatiousness and recalcitrance warranting submission of the claim of vexatious refusal. The stipulation indicates that the tape containing the recording of the telephone conversation was reused, and the conversation was erased. The stipulation does not present an explanation, but the fact that the stipulation states that the entire tape was reused seems to suggest that the tape was reused in the normal course of business. We are not told of the reasons for recording the conversations in the first place. We do not know if all conversations are recorded or just those in which the customer agrees to accept the coverage. It could be the conversations are recorded to allow a supervisor to listen to the tapes to see if the telephone solicitor is following instructions on how to make the presentation. It could also be that the tapes are kept for several months, until the charge for the monthly premium begins appearing on the credit card, to allow supervisors to verify that people who are billed the premiums did in fact

agree to the coverage. It could be that the tapes are made so that they will be available if needed in connection with a claim. Also, it could be that the tapes are made for some other long term purpose. Without knowing why the tapes are made in the first place, or how long they were intended to be preserved, we cannot determine whether there is anything sinister about the reuse of the tape. Also, it is not clear from the stipulation that, at the time the tape was erased, the defendant would or should have been aware that the tape recording of the conversation was pertinent to the issues of the lawsuit. Penney's defense was one of *constructive* notice of the exclusions. Prior to that, Penney at first denied the claim on the basis that the death occurred prior to the issuance of the policy, contending that no coverage attached prior to issuance of the policy three days after the telephone call. Penney never denied that Mrs. Morris accepted coverage. As far as we know, Penney did not contend that the solicitor *actually discussed any exclusions* with Mrs. Morris. There is no evidence tending to show that the erasure would have been expected by Penney to hinder the claim in any way.

■ It is theoretically possible, of course, that there was something on the tape that Penney did not want to be heard, and that Penney intentionally reused the tape, fearing that the recording would undermine its theory of defense. However, nothing specific has been suggested by plaintiff. The cases involving claims of spoliation have required more than the mere loss or destruction of the evidence. *See* cases discussed in *Baugher v. Gates Rubber Co.*, 863 S.W.2d 905, 908–909 (Mo.App.1993). When spoliation is urged as a rule of evidence which gives rise to an adverse inference, it is necessary that there be evidence showing intentional destruction of the item, and also such destruction must occur under circumstances which give rise to an inference of fraud and a desire to suppress the truth. *Moore v. General Motors Corp.*, 558 S.W.2d 720, 735 (Mo.App.1977). In such cases, it may be shown by the proponent that the alleged spoliator had a *duty*, or

the telephone call but on the date of the issuance of the policy.

should have recognized a *duty*, to preserve the evidence. *Id. See also Reid v. State Farm Mutual Auto Ins. Co.*, 173 Cal.App.3d 557, 218 Cal.Rptr. 913, 927 (1985). Here, the evidence fails to show facts from which we infer that Penney should have recognized a duty to preserve the tape. It is true that Penney would have known of the existence of the claim at the time the tape was reused, but there is no reason to believe that Penney would have believed that the contents of the tape were pertinent to the claim, since Penney never denied that Mrs. Morris had agreed to the coverage. Penney stipulated to Mrs. Morris' memory of the conversation. Also, Penney produced a copy of the script which, according to Penney, the telephone solicitors were directed to use. It was acknowledged by Penney that the existence of exclusions would not ordinarily have been mentioned. It is difficult to conceive of what might have been on the tape which would have been more detrimental to defendant than the facts which defendant was willing to concede anyway. Thus, the bald stipulation of facts submitted by plaintiff does not logically raise an inference of bad faith intent to hinder plaintiff's claim. Nor does the evidence indicate that the erasure had an effect of hindering plaintiff's claim.

Plaintiff also argues that the fact that an employee or agent of the defendant insurer, when contacted by telephone for a claim form, offered the view that "it would do no good" to submit a claim form, is evidence warranting a submission of a vexatious refusal claim. Such a remark could have been an improper attempt to discourage a legitimate claim, or it could have reflected the honest belief of defendant's employee that the claim would not be covered. One of the exhibits included with the stipulation was the letter from a Penney claims specialist dated May 9, 1991, addressed to the son of Mr. Morris, expressing sympathy as to the death of his father and enclosing claim forms. The letter included the following:

> According to our telephone conversation on May 8, 1991, Frank Morris died on April 25, 1991 and the policy was issued on April 28, 1991. As discussed, the policy states that the bodily injury must occur while the insurance is in force. However, as you requested, we are enclosing a set of forms that should be fully completed and returned with a certified death certificate in the enclosed envelope we are providing for your use.

The letter sheds light on the reason for the comment that submitting a claim "would do no good." Initially, Penney took the position that there was no coverage based on the fact that the policy had not yet been issued at the time of death. Penney subsequently, presumably upon advice of counsel, abandoned that position. There is no evidence that after the claim was formally filed Penney continued to take such a position. The company mailed a claim form promptly when one was requested, and the letter, though implying the claim would not be covered, was courteous, and made no effort to discourage submission of the claim. We conclude that the stipulation and the content of the letter are insufficient to raise an inference of improper motives.

■ Plaintiff also contends that the fact that defendant was not cooperative and helpful in discovery is pertinent to a vexatious refusal claim. Plaintiff presents no authority for this proposition, and we find this contention to be without merit. The defendant has the right to defend an action with all the weapons at its command so long as it has reasonable grounds to believe its defense is meritorious. *Suburban Service Bus Co. v. National Mutual Casualty Co.*, 237 Mo.App. 1128, 183 S.W.2d 376, 378 (1944).

The courts have regarded § 375.420 as penal in nature, and therefore to be strictly construed. *Katz Drug Co.*, 647 S.W.2d at 840. Thus, it is suggested in *Whited v. National Western Life Ins. Co.*, 526 S.W.2d 364, 369 (Mo.App.1975) that the standard of review with regard to a directed verdict for defendant is whether the trial court abused its discretion in directing a verdict for defendant.[5] We need not reach the issue of the

---

5. In *Whited*, the plaintiff-appellant conceded that the standard of review was only for an abuse of discretion. *Id.* at 369. Our research fails to confirm that such is a well-settled matter. *See, e.g., Howard Const. Co. v. Teddy Woods Const. Co.*, 817 S.W.2d 556 (Mo.App.1991) (applying

standard of review because whether we review as we would any other grant of a directed verdict, or whether we review only for an abuse of discretion, the result is the same in this case: on the very limited facts submitted, even considering those facts in a light favorable to plaintiff, we do not find a submissible case of vexatious refusal to pay.

 Where there is evidence that an insurer's bad faith efforts have hindered a legitimate insurance claim, the action for vexatious refusal should be submitted to the jury. In this case, however, we find that the trial court did not err in directing a verdict for defendant on the claim of vexatious refusal.

The judgment is affirmed. Appellant's motion for attorney's fees on appeal is denied.

usual standard of review for trial court ruling on submissibility). In this case, we have the luxury

of saving that issue for another day.