

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| K.B, et al., | ) | No. ED112202 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| v. | ) | Cause No. 2011-CC01034 |
| | ) | |
| OASIS FOOT SPA AND | ) | |
| MASSAGE, LLC, and | ) | |
| ZHENGZHAO LU, | ) | Honorable Michael J. Fagras |
| | ) | |
| Appellants. | ) | Filed: October 8, 2024 |

Oasis Foot Spa & Massage, LLC and Zhengzhao Lu (collectively "Appellant") appeal the circuit court's judgment entered after a jury trial awarding compensatory and punitive damages to six plaintiffs[1] (collectively "Plaintiffs") for sexual assault caused by Oasis' employee, Xing Wu Zhang. The circuit court's judgment is affirmed.

## Background

Oasis was a limited liability company that operated a massage therapy business. Lu was its only managing member. Lu's wife, Angela Zuo, was Oasis's manager. Zuo was responsible for hiring, training, and supervising employees.

---

[1] Because there is no challenge to the abuse each plaintiff suffered, there is no need to detail Zhang's actions toward them.

While they were preparing to open Oasis, Lu and Zuo were approached by Zhang, who wanted to work as a massage therapist. Zhang told Zuo he worked at a nearby spa for two years, but he did not hold a Missouri license to practice massage therapy. Despite Zhang's lack of licensure, Zuo believed that he was qualified to work at Oasis due to his prior massage experience. Zuo did not contact Zhang's previous employer because she believed it was inappropriate to call a competitor to ask about a potential hire. Zuo also did not perform a background check on Zhang.

Oasis opened in January 2019, and Zhang was hired in February 2019 to perform foot massages at Oasis. Eventually, he started performing full body massages on a regular basis.

In April 2019, Zuo saw an online complaint about a massage Zhang performed at Oasis. The complaint stated Zhang inappropriately touched J.G. during the massage. Zuo did not take the complaint seriously, and Oasis did not investigate to determine the veracity of J.G.'s complaint.

While employed at Oasis, Zhang sexually assaulted at least eight women, including Plaintiffs. Each assault followed a similar pattern: Zhang would lead the woman to a private massage room; the woman would undress and lay on the massage table; Zhang would begin the massage and then climb onto the table, pinning the woman down while straddling her. Once the woman was unable to move, Zhang committed one or more sexually violative acts.

In September 2019, after being assaulted, K.B. left Oasis and went to a hospital emergency room. There, K.B. had a sexual-assault kit examination performed. K.B. also provided law enforcement with her statement. A detective returned to Oasis and located Zhang.

The detective took Zhang to the police station for a voluntary interview. At the police station and prior to interviewing Zhang, the detective located two additional reports of sexual

abuse by a therapist with the same name. After interviewing Zhang, the detective determined there was probable cause to arrest him. The circuit court set Zhang's bond, which Lu and Zuo paid. Zhang was released but failed to appear at his January 2021 arraignment.

Subsequently, the Missouri Board of Therapeutic Massage investigated and closed Oasis because of the sexual assaults. Oasis was sold in February 2020, and the LLC was dissolved in July 2020. Lu received a distribution of assets from Oasis in the dissolution, rendering him Oasis's statutory trustee. *See* section 347.141, RSMo Supp. 2017.[2]

In October 2020, Plaintiffs filed suit against Oasis alleging claims of negligent hiring and retention, and negligent supervision. Plaintiffs requested compensatory and punitive damages. After Oasis's dissolution, Plaintiffs amended their petition adding Lu and Zuo as defendants in their capacity as statutory trustees.

In 2021, Zuo threw away all of Oasis's business records, including all client information. Zuo knew of the suit against Oasis but testified she disposed of the documents while cleaning.

At trial, the evidence included the videotaped depositions of Lu, Zuo, and an expert witness ("Expert").[3] Expert testified regarding spa rules, regulations, and standards. Additionally, Expert offered her opinion that she believed Lu and Zuo were still involved in the spa industry based upon Secretary of State records. Zuo also testified in person. K.B.'s treating physician testified regarding his assessment of each victim, explaining the long-term damage caused by the sexual assaults. The jury also heard from each Plaintiff. In their testimony, Plaintiffs explained the severity of the repercussions from Zhang's assaults in their daily lives.

---

[2] All statutory references are to RSMo Supp. 2017.
[3] All names of witnesses have been omitted in accordance with Section 509.520, RSMo Supp. 2023.

At the close of its evidence, Oasis moved for a directed verdict on behalf of Lu and Zuo, claiming they should not be defendants. Oasis noted Zuo had no ownership interest in Oasis and had never been named as an LLC member. The circuit court entered a directed verdict for Zuo.

The jury returned its verdict in Plaintiffs' favor. It assessed compensatory damages against Oasis and Lu for each Plaintiff on their claims of negligent hiring and retention, and claims of negligent supervision. The jury also assessed punitive damages against Oasis and Lu for each Plaintiff. The circuit court entered a judgment consistent with the jury's verdict. This appeal follows.

**Analysis**

*Spoliation*

Appellant raises two points on appeal claiming the circuit court erred in applying the spoliation doctrine and allowing an adverse inference to be read during the trial. Appellant argues that (1) there was no evidence of any fraud, deceit, or bad faith in the destruction of Oasis's records and (2) even if the adverse inference admission were warranted, it went too far because there was no evidence the business records would have put it on notice of Zhang's dangerous proclivities.

"The evidentiary spoliation doctrine applies when there is intentional destruction of evidence, indicating fraud and a desire to suppress the truth." *Brown v. Hamid*, 856 S.W.2d 51, 56-57 (Mo. banc 1993). "To constitute spoliation, the destructive act must be intentional, indicating fraud, deceit, or bad faith." *Marmaduke v. CBL & Assocs. Mgmt., Inc.*, 521 S.W.3d 257, 269 (Mo. App. 2017). "Spoliators are subject to an adverse evidentiary inference where they are held 'to admit that the destroyed evidence would have been unfavorable to their position.'" *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 693 (Mo. App. 2019) (quoting *Schneider v.*

4

*G. Guilliams, Inc.*, 976 S.W.2d 522, 526 (Mo. App. 1998)). The spoliation doctrine is designed to punish spoliators and is not concerned with whether those spoliators suffer prejudice. *Hill v. SSM Health Care St. Louis*, 563 S.W.3d 757, 761 (Mo. App. 2018).

Destruction of evidence without an adequate explanation may support an adverse inference. *Gilmore v. Mo. Dep't of Soc. Servs., Children's Div.*, 658 S.W.3d 146, 154 (Mo. App. 2022). If the alleged spoliator knew or should have known there was a duty to preserve the evidence, the evidence's destruction may give rise to an inference of fraud. *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 77-78 (Mo. App. 1995).

Prior to Zuo's destruction of business records, Appellant acknowledged receiving a preservation letter from Plaintiffs in 2019. Appellant was served with the petition for this suit in late 2020. The preservation letter and petition both informed Appellant of the specific claims being made in the lawsuit. Appellant retained counsel in early January 2021 prior to the destruction of the records. Additionally, Appellant had a regulatory obligation to maintain and preserve all client records for at least three years. 20 CSR § 2197-5.010(1)(F). However, despite this knowledge, Zuo testified she destroyed all of Oasis's business records in 2021.

During trial, and outside the presence of the jury, Appellant's counsel raised his concerns about providing the adverse inference to the jury, stating, "[M]y earlier comments remain on the specific issue of where it was cut off. The fact that it was a negative inference, it should stop there, and I have not changed my position on that." The circuit court and trial counsel discussed the wording of the adverse inference. Appellant's counsel argued Plaintiffs' proposed adverse inference improperly included language informing the jury what the destroyed business records would show. Plaintiffs' counsel explained, "[W]hen I'm asking the Courts [*sic*], I want to read the full admission which includes the punishment which is the point of spoliation that -

5

addressing the knowledge aspect." And Appellant's counsel responded, "I don't believe we have an issue given your Court's guidance that we'll be permitted to explore it with her on the stand."

Plaintiffs' counsel read the adverse inference admission to the jury. The adverse inference admission stated, "[Appellant] destroyed all Oasis's business records after this lawsuit was filed. [Appellant] admit[s] that Oasis business records would have contained evidence unfavorable to [Appellant's] position that they did not have notice of Xing Wu Zhang's dangerous proclivities while working at Oasis."

Appellant failed to preserve either challenge to this adverse inference. First, Appellant claims this adverse inference should not have been read because there was no evidence of any fraud, deceit, or bad faith in the destruction of Oasis's records to support the spoliation doctrine. Appellant asserts it preserved this challenge because it raised this issue in the motions in limine and in its post-trial motion. Appellant's counsel explained that because the circuit court decided pre-trial to allow Plaintiffs request for the adverse inference, "the discussion at trial focused on the admission's wording."

Motion in limine rulings are interlocutory and may be changed during the course of trial. *Rhoden v. Missouri Delta Med. Ctr.*, 621 S.W.3d 469, 484 (Mo. banc 2021). "A motion in limine, by itself, preserves nothing for appeal." *Id.* (quoting *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003)). "Thus, 'to properly preserve for appeal the admission of evidence complained of in a motion in limine, the party challenging the evidence must also object at trial.'" *Cottonaro v. Express Med. Transportation, Inc.*, 688 S.W.3d 751, 756 (Mo. App. 2024) (quoting *Church v. CNH Indus. Am. LLC*, 671 S.W.3d 829, 842 n.4 (Mo. App. 2023)). "The objection at trial must be specific and made contemporaneously with the purported error." *Brock v. Shaikh*, 689 S.W.3d 792, 795-96 (Mo. App. 2024) (quoting *State v. Driskill*, 459 S.W.3d 412,

6

425-26 (Mo. banc 2015). Finally, because this case was tried by a jury, the same claim of error must be reasserted in a post-trial motion. *Hootselle v. Mo. Dep't of Corr.*, 624 S.W.3d 123, 131 (Mo. banc 2021); Rule 78.07(a).

Appellant raised the issue of whether giving the adverse inference were appropriate in motions in limine and in the post-trial motion. But Appellant did not object to giving the adverse inference at trial. An objection at trial would have placed the issue squarely before the circuit court after the court was able to consider all of the evidence presented at trial. This is a crucial step in preserving an argument for appellate review. The circuit court may have come to a different conclusion regarding the propriety of the adverse inference after hearing Zuo's testimony. Because Appellant failed to make a specific, contemporaneous objection to Plaintiffs' adverse inference, Appellant failed to preserve the issue for appeal.[4]

Second, Appellant claims the adverse inference wording was incorrect because the inference stated that Appellant knew its business records contained information of Zhang's dangerous proclivities. Appellant did object to the adverse inference wording at trial, but Appellant did not raise this same issue in its post-trial motion. Accordingly, Appellant's arguments regarding the adverse inference are not preserved for appeal. *Hootselle*, 624 S.W.3d at 13; Rule 78.07(a).

---

[4] In fact, Appellant's counsel seemed to concede that the adverse inference could be given and counsel just wanted to discuss the circumstances surrounding the destruction of Oasis's business records.

*Admission of Expert Testimony*

Appellant raises two points claiming the circuit court erroneously admitted Expert's testimony. Appellant claims that Expert should not have been able to rely on hearsay statements in the police report to form her opinion that it should have known Zhang's dangerous propensity before hiring him. Appellant also claims Expert should not have been allowed to testify regarding her opinion that she believed Lu and Zuo were still involved in the spa industry because it exceeded her area of expertise.

*1. Reliance on Hearsay*

Appellant claims the circuit court erred in admitting Expert's testimony regarding her opinion of what Oasis would have learned from statements in a police report. Appellant made a timely hearsay objection to Expert's testimony about the police report, asserting that third-party witness statements are inadmissible. Appellant argues this information was not reliable and not the type of information reasonably relied on by experts.

"The admission or exclusion of evidence lies within the sound discretion of the [circuit] court and will not be disturbed absent clear abuse of discretion." *Sherrer v. Bos. Sci. Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020) (quoting *Cox v. Kan. City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)). "If reasonable persons can differ as to the propriety of the [circuit] court's action, then it cannot be said that the [circuit] court abused its discretion." *Linton by & through Linton v. Carter*, 634 S.W.3d 623, 627 (Mo. banc 2021) (quoting *In re Care & Treatment of Donaldson*, 214 S.W.3d 331, 334 (Mo. banc 2007)). An erroneous evidentiary ruling warrants reversal when prejudice is demonstrated. *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010).

Section 490.065.1(3) allows experts to base their opinions on "facts or data" that are "reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable." Experts are not prohibited from relying upon hearsay. *Otwell v. Treasurer of Missouri*, 634 S.W.3d 850, 859 (Mo. App. 2021). "Merely because an expert relied on information and opinions of others does not automatically disqualify his testimony[;] [a]s long as such sources serve only as a background for his opinion and are not offered as independent substantive evidence ... he should not be precluded from testifying." *Id*. (quoting *Peterson v. Nat'l Carriers, Inc.*, 972 S.W.2d 349, 354 (Mo. App. 1998)).

Expert's testimony at trial was presented by videotaped deposition. In her testimony, Expert was asked what an employer in the massage industry is required to do in the hiring process. Expert explained industry standards for the hiring process, which included making sure your employees are licensed and insured, conducting a criminal background check, and getting a professional reference from prior employers. Expert testified Appellant failed to comply with all of these standards. Expert further testified that in her research of Zhang's background, she noted two police reports that alleged prior inappropriate touching or sexual misconduct by Zhang at his prior employer. Expert also stated the incidents at the prior employer "had many of the same characteristics as the assaults that occurred at Oasis." The police reports were "facts or data" which Expert "reasonably relied upon" to form her opinion regarding Oasis's hiring and supervision of Zhang. Section 490.065.1(3).

Moreover, the significance of the testimony regarding the prior police reports was the fact that the reports existed. Expert did not testify about the prior reports to suggest that they were true, but only to note that they were available if someone went looking for them. Because the reports were not used for the truth of the matter asserted, Expert's testimony about them was not

hearsay. As a result, the circuit court did not abuse its discretion by admitting Expert's testimony into evidence.

*2. Area of Expertise*

Appellant claims the circuit court abused its discretion in allowing Expert to testify about Secretary of State records. Appellant believes Expert should not have been allowed to testify regarding her opinion that she believed Lu and Zuo were still involved in the spa industry because it exceeded her area of expertise.[5]

Section 490.065.2(1) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case[.]

Section 490.065, therefore, permits a witness to testify in the form of an opinion if the opinion is within the witness's area of expertise.

---

[5] At trial, Appellant attempted to challenge the admission of Expert's testimony by making an objection to a "lack of foundation." "To properly preserve a challenge to the admission of evidence, the objecting party must make a specific objection to the evidence at the time of its attempted admission." *Rhoden*, 621 S.W.3d at 484 (quoting *Shallow v. Follwell*, 554 S.W.3d 878, 884 n.2 (Mo. banc 2018)). This objection must be specific. *Id*. "[G]eneral objections such as 'lacks a foundation,' 'irrelevant,' 'calls for speculation,' 'is self serving,' and the like, are not sufficiently specific objections." *Catroppa v. Metal Bldg. Supply, Inc.*, 267 S.W.3d 812, 816 (Mo. App. 2008) (quoting *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 19 (Mo. App. 2002)). To the extent Appellant seeks review of its "lack of foundation" argument, this issue is not preserved for appeal.

Expert testified that in addition to being a licensed massage therapist, she was an educator, speaker, and consultant for the massage spa and wellness industry. Expert is also a consultant who assists with business formation and incorporation. Expert demonstrated that her skills and experience qualify her to offer an opinion regarding the Secretary of State documents.[6] The circuit court did not abuse its discretion by admitting this testimony.

*Instructional Error*

Appellant claims the circuit court erred by submitting punitive damage instructions allowing the jury to award punitive damages for each Plaintiff against Oasis and Lu. Appellant claims that because Lu was a defendant in his limited capacity as a statutory trustee, the instructions should have identified him as a statutory trustee. Appellant believes failure to name Lu as a statutory trustee confused the jury.

A claim of instructional error is reviewed *de novo*. *Allen v. 32nd Jud. Cir.*, 638 S.W.3d 880, 890–91 (Mo. banc 2022). "To reverse a jury verdict on the ground of instructional error, the party challenging the instruction must show that: (1) the instruction as submitted misled, misdirected, or confused the jury; and (2) prejudice resulted from the instruction." *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. banc 2015) (quoting *Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 90-91 (Mo. banc 2010)). "Instructional error requires reversal only if the error resulted in prejudice materially affecting the merits of the case." *Kader v. Bd. of Regents of Harris-Stowe State Univ.*, 565 S.W.3d 182, 186 (Mo. banc 2019).

---

[6] Appellant conceded that the Secretary of State documents were independently admissible. Further, when Plaintiffs sought to admit these documents, Appellant had no objection.

Appellant identifies six jury instructions, one for each plaintiff, that it claims allowed the jury to consider both Oasis's and Lu's conduct in determining punitive damages. Appellant quotes the first paragraph of these instructions to support its argument. Those paragraphs state:

> If you find in favor of plaintiff [insert name] under [the prior instructions determining whether Oasis was liable for negligent supervision and negligently hiring and retaining Zhang] and if you believe the conduct of defendants as submitted in [those same instructions] showed complete indifference to or conscious disregard for the safety of others, then, in Part 4 of [your verdict], you may find that defendants Oasis [] and [] Lu liable for punitive damages.

Appellant claims these instructions allowed the jury to assess punitive damages based on Oasis's and Lu's conduct. Appellant argues the instructions should have included the phrase "as a statutory trustee" following Lu's name.

"When submitting punitive damages in a negligence case, a typical instruction to the jury is that, upon a finding of negligence, it should determine whether a defendant should have known that its conduct created a high degree of probability of injury and thereby showed complete indifference to or conscious disregard for the safety of others." *Frost v. PCRMC Med. Grp., Inc.*, 694 S.W.3d 103, 124 (Mo. App. 2024). The instructions, here, informed the jury it was to consider the conduct as submitted in the prior instructions for negligently supervising, hiring, and retaining Zhang. Each of the prior twelve instructions for negligent supervision, hiring, and retention directed the jury to look to *Oasis's conduct* to determine whether there was a "complete indifference to or conscious disregard for the safety of others." And, if the jury found Oasis's conduct met this standard, the jury would "*be given further instructions for assessing the amount of punitive damages ....*" These instructions did not assess any punitive damage amount; they merely were the gateway to proceed with the second phase of trial to determine a potential punitive damage award.

A jury is presumed to follow a circuit court's instructions. *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 435 (Mo. banc 2016). Because the jury was instructed to look at Oasis's conduct only, the jury could not have considered Lu's individual actions in determining whether punitive damages could be assessed in the second phase of trial. Accordingly, the jury determined *Oasis's conduct*, not Lu's, supported a punitive damage phase of the trial.

Yet, Appellant argues the instructions should have included the fact Lu was a statutory trustee. Appellant did not propose to define that term nor did Appellant explain to the jury at any point during the trial what a statutory trustee was. Inserting a term of art in the instructions without any explanation or definition could have confused the jury.

The instructions as submitted did not mislead, misdirect, or confuse the jury. Any failure to identify Lu as a statutory trustee was inconsequential and not prejudicial. Appellant is unable to demonstrate that the circuit court's failure to include an undefined legal term of art in the jury instructions "materially affected the merits of the case." *Williams v. Mercy Clinic Springfield Communities*, 568 S.W.3d 396, 413 (Mo. banc 2019). Accordingly, the circuit court did not err in submitting these instructions.

*Punitive Damages*

Appellant claims the circuit court erred in overruling its motion to reduce the punitive damage award because it violated due process. Appellant argues the punitive awards were grossly excessive given the size of the compensatory awards. Appellant asserts it had no notice the awards could have been this great and they exceed what is necessary to punish a closed business.

> When faced with a claim that a punitive damages award violates due process, a court must consider three guideposts: (1) the degree of the reprehensibility of the defendant's conduct; (2) the ratio between the harm the defendant inflicted— measured in actual damages—and the punitive damages award; and (3) a

13

comparison of the punitive damages award and the civil or criminal penalties that
could be imposed for comparable misconduct.

*All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281, 296 (Mo.

banc 2022).

The first guidepost, the degree of reprehensibility of the defendant's conduct, is the most

important factor. *Id*. "This principle reflects the accepted view that some wrongs are more

blameworthy than others." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134

L.Ed.2d 809 (1996). Violent crimes are more serious than nonviolent crimes, and crimes

involving "'trickery and deceit' are more reprehensible than negligence." *Id.* at 576. To

determine a defendant's reprehensibility, courts determine whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced
> an indifference to or a reckless disregard of the health or safety of others; the target
> of the conduct had financial vulnerability; the conduct involved repeated actions or
> was an isolated incident; and the harm was the result of intentional malice, trickery,
> or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521, 155 L.

Ed. 2d 585 (2003).

Appellant's conduct was reprehensible. Appellant's actions ultimately caused Plaintiffs to

suffer extreme economic, physical, and mental harm. By failing to comply with the State's rules

and regulations, Appellant hired and retained Zhang. Appellant's actions provided Zhang with

the unfettered opportunity to repeatedly sexually assault women at Oasis. Not only did Appellant

provide the opportunity for Zhang to sexually assault Oasis's patrons, Appellant paid him to do it

and turned a blind eye to criminal conduct. Additionally, when Zuo saw an online complaint

indicating that Zhang had assaulted a client, she decided not to take the complaint seriously and

not to look into the complaint.

14

The second guidepost is the ratio between the harm inflicted and punitive damage award. *All Star Awards*, 642 S.W.3d at 296. However, courts do not utilize a mathematical formula. *Gore*, 517 U.S. at 582. Courts have authorized high-ratio punitive damage awards "to have a sufficient deterrent effect," *Poage v. Crane Co.*, 523 S.W.3d 496, 523 (Mo. App. 2017), or when the underlying misfeasance results "in only a small amount of economic damages." *Campbell*, 538 U.S. at 425 (quoting *Gore*, 517 U.S. at 582). Additionally, a "higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582.

The ratio between the compensatory and punitive damages for Plaintiffs range from 1.3:1 to 2.1:1. "It is impossible to place monetary value on the physical, mental, and emotional anguish Plaintiffs suffered …." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 723 (Mo. App. 2020). "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003). While the ratio in this case is low, the imposition of punitive damages also supports the State's interest in deterring companies from failing to follow laws and regulations it has set to protect our citizens. *See also Poage*, 523 S.W.3d at 524 (finding imposing a high ratio punitive damage award supports the State's interest of "deterring companies from putting unreasonably dangerous products into our State's stream of commerce").

The third guidepost involves comparing the punitive damages award and potential civil or criminal penalties. *All Star Awards*, 642 S.W.3d at 296. However, this factor is the least persuasive factor because "violations of common law tort duties often do not lend themselves to a comparison with statutory penalties." *Ingham*, 608 S.W.3d at 723 (quotation omitted). While

Appellant's misconduct does not straightforwardly comport with a statutory penalty, the State did investigate Oasis and closed the business. The circuit court did not err in overruling Appellant's motion regarding the punitive damage award as a violation of its due process rights.

**Conclusion**

The circuit court's judgment is affirmed.

John P. Torbitzky, J.

Robert M. Clayton III, J., and
Michael S. Wright, J., concur.